UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
SIKHS FOR JUSTICE, et al.,　　　　　　　　　　　　Case No.: 10-cv-02940
　　　　　　　　　　　　　　　　　　　　　　　　　Hon. Robert W. Sweet

　　　　　　　　　　　Plaintiffs,

　　　　　-against-

KAMAL NATH, et al.,

　　　　　　　　　　　Defendant.
-----------------------------------------------------------X

## **AFFIDAVIT OF EXPERT WITNESS**

I, G.C. Malhotra, being duly sworn, depose and say:

　　　1.　　　I am a former Secretary General of the Lok Sabha (the House of People of the Parliament of India), a position which I held from July 14, 1999 to July 31, 2005. I joined the Lok Sabha Secretariat in 1970, where I served in various capacities and associated with almost every area of the functioning of Parliament.

　　　2.　　　I hold a Master's Degree in Economics (1969) from Meerut University, Uttar Pradesh, India; a Masters Degree in Law (1978) and a Bachelors Degree in Law (1975) from the University of Delhi, New Delhi, India.

　　　3.　　　I have authored, edited and translated several books on parliamentary laws and procedures. I have also published several articles on parliamentary law and procedures and serve as a resource for several national and international training programmes, conferences, seminars and workshops on parliamentary law and procedures. A list of my publications is set forth in **Appendix – I.**

　　　4.　　　I have served as a Senior Parliamentary Staff Advisor to the People's Majlis, Republic of Maldives, Male; and as a Consultant for the Canadian International

Development Agency (CIDA) and the Deutsche Gesellschaft für Technische Zusammenarbeit (GTZ) to the House of People's Representatives, Federal Democratic Republic of Ethiopia, Addis Ababa.

5.	I render this opinion in support of a Motion to Dismiss being filed on behalf of the Defendant, Mr. Kamal Nath.

6.	For the purposes of this opinion, I have relied on relevant parliamentary laws, rules and procedures applicable in India, as well as source material cited herein.

7.	I am familiar with the First Amended Complaint filed by *Sikhs for Justice et al.* against the defendants Indian National Congress Party and Kamal Nath before the United States District Court for the Southern District of New York, and dated February 28, 2011 ("First Amended Complaint").

8.	This opinion deals only with the laws and procedures of the Indian parliamentary system as presently applicable. I am not giving any opinion on the laws of the United States or on any other law other than the laws and procedures of the Indian parliamentary system.

9.	I have considered and relied on the following documents in preparing this opinion: the First Amended Complaint; the January 2004 Kamal Nath Affidavit submitted in connection with the Nanavati Commission; and all source materials cited throughout my opinion.

10.	I have been asked to provide an opinion (i) describing India's Constitution and Parliamentary form of government, (ii) describing the role and functions of Members of Parliament and Council of Ministers, and (iii) on whether Minister Nath's presence and conduct at Gurudwara Rakab Ganj Sahib on November 1, 1984 was consistent with his official role as a Member of Parliament based on my

background as a former senior functionary of the Indian Parliament (Lok Sabha) Secretariat.

11.     I have made the following assumptions for purposes of this opinion: the present lawsuit was commenced in April 2010; and the statements contained in Minister Nath's January 2004 Affidavit submitted in connection with the Nanavati Commission accurately reflect Minister Nath's presence and conduct at Gurudwara Rakab Ganj Sahib on November 1, 1984.

12.     I have been retained by Luthra & Luthra Law Offices, 103 Ashoka Estate, 24 Barakhamba Road, New Delhi – 110001, who are the Indian Counsel to the Defendant, Mr. Kamal Nath. By way of an Engagement Letter dated May 15, 2011, I have received INR 2,50,000/- (Rupees Two Lakh Fifty Thousand only) as fee for rendering this present opinion.

13.     I have not, in the last 4 years, testified or been deposed as an expert in any other case.

# I

## Background Information

14.     In 1984, at the time of the events underlying this action, and in 2010, when this action was commenced, Minister Nath was a Member of Parliament and public servant in India.

15.     Minister Nath has served as a Member of Parliament since 1980, when he was first elected to the 7th Lok Sabha (House of the People) in 1980. Minister Nath has been re-elected to the Lok Sabha in every subsequent General Election.

16.     Since 1991, Minister Nath has also served as a member of the Union Council of Ministers. Specifically, he served as Union Minister of State for the

Environment and Forests (Independent Charge)[1] from 1991 to 1995, then as Union Minister of State for Textiles (Independent Charge) from 1995 to 1996. From 2001 to 2004, he was the General Secretary of the Indian National Congress Party ("INC"). After his re-election to the 14th Lok Sabha in the 2004 General Elections, Mr. Nath served as Union Cabinet Minister of Commerce & Industry. On May 16, 2009, Mr. Nath was once again elected from constituency for the 15th Lok Sabha and re-entered the Union Cabinet, this time as Union Minster of Road Transport & Highways, a position he held until January 2011. Since then, Minister Nath has been serving as the Union Urban Development Minister.

17.     In order to more fully understand Minister Nath's roles, functions and duties in these various positions, I start with a brief description of India's Constitution and Parliamentary forms of government, followed by a description of the roles, functions and duties of Members of Parliament and the Council of Ministers.

A.    **India's Constitution and Parliamentary form of Government.**

18.     India, a Union of States, is a Sovereign Socialist Secular Democratic Republic which is governed in terms of the Constitution of India (the "Constitution"), which came into force on January 26, 1950.

19.     Under the scheme of the Constitution, the three main organs of the State are the Parliament, the Executive and the Judiciary. The Constitution defines the powers, delimits the jurisdiction, demarcates the responsibilities, and regulates the inter-relationship between the three organs of the State.

20.     Under the scheme of the Constitution, the relationship between the Executive and the Parliament is defined in a manner which results in these two organs operating as inseparable partners in the business of the Government. The Judiciary, on the other hand, is an independent authority empowered by the Constitution to consider

---

[1] A "Minister of State with independent charge" is a junior Minister in the Federal (State) or Central Government of India but is in charge of a ministry, unlike a "Minister of State" who is also a junior Minister but assists a Union Cabinet Minister.

the legality and constitutionality of the orders of the Executive and the laws enacted by the Parliament. The Constitution clearly envisages the separation of powers between the three organs of the State, and the Constitution itself contains a system of checks and balances to ensure a harmonious balance of powers which allows each of the three organs of the State to function within their constitutional limits. *(Manohar Joshi: Fifty Years of Lok Sabha; in G. C. Malhotra, ed., Fifty Years of Indian Parliament; pp. .xv-xvi).*

21.    The Constitution provides for a Parliamentary form of government based largely on that of the United Kingdom (Westminster System). The President of India is the constitutional head of the Executive of the Union of India. Under Article 79 of the Constitution, the Parliament of the Union of India consists of the President and the two Houses of Parliament viz., the 250-member indirectly-elected Council of States (the "Rajya Sabha") and the 545-member directly-elected House of the People (the "Lok Sabha"). The present Lok Sabha is the 15th Lok Sabha and was constituted on May 18, 2009 following the 15th General Elections to the Lok Sabha.

**B.    Members of Parliament ("MP")**

22.    The Constitution does not strictly enumerate a statutory table of duties and responsibilities of a MP. Consequently, reference may be had to the duties and responsibilities which may be cast upon an MP by the political party which such MPs represent.

23.    In general terms, given the background of the Constitution and the parliamentary system of government followed in India, MPs discharge several roles, viz., – they are the elected representative of their constituency, a member of the legislature, a member of his political party, and may also be a Union Minister.

24.    As an elected representative of the people, MPs are directly accountable to the people of the constituency that return him to the legislature, to the party to which he is affiliated and, above all, to the nation as a whole. MPs participate

in the process of translating the needs of the society into legislations and have several parliamentary instruments at their disposal, *e.g.* questions, motions, debates, discussion, etc., which enable MPs to serve as watchdogs of public interest and to enforce accountability of the Executive. *(P. M. Sayeed: Parliament – a multi-functional institution; in G. C. Malhotra, ed., Fifty Years of Indian Parliament; pp.31-33).*

25. MPs are the accredited representatives of their constituencies and are responsible for the well-being of such constituents, but cannot restrict their concern only to those who have elected them. MPs are equally answerable to opponents or politically neutrals. MPs serve as the link between the government and the people, and the representational role of MPs have a much wider scope than what is usually referred to as constituency work. *(P.M. Sayeed, supra).* On account of their privileged positions, MPs have greater access to the various ministries and the bureaucracy, which allows them to discharge their representational role more effectively by raising people's problems directly to the top rungs of the government.

26. On issues which are of great significance in the national context (as opposed to being constituency-specific), MPs (who are ultimately responsible to the Parliament) often play a substantial role in the policy-making process and, as such, are called upon to do much more than simply articulating the needs of their constituency. *(P.M. Sayeed, supra).* MPs are not only Members of this or that particular area of India, but each Member of Parliament is a Member for India and represents India. *(Jawaharlal Nehru, Lok Sabha Speech, December 21, 1955 in Jawaharlal Nehru's Speeches – 3, March 1953 – August 1957, Publications Division, Ministry of Information & Broadcasting, Government of India, 1983, New Delhi).*

27. In young democracies, the maintenance of peace and social stability are a basic concern for the national authorities. Therefore, in addition to adopting laws and overseeing government action, the Parliament has also assumed the role of ensuring social cohesiveness and of consolidating the national conscience. Each time the peace has been threatened or the consensus on national unity has been jeopardized,

MPs have assumed the duty to act as intermediaries to solve the conflict in question. (*IPU: Guide on Parliament and Democracy, Chapter 6: Promoting National Integration through Democratic Processes, 2006*).

28. A distinctive aspect of the Parliament's role in promoting national integration lies in the contribution it can make to conflict resolution. Parliaments constitute a key site for resolving political disagreement through the democratic means of dialogue and compromise. As such, they have a valuable role to play in helping resolve wider disagreement and conflict within society at large. However, among the most important but least noticed work of parliamentarians is promoting national integration through their support for democratic processes and institutions throughout a country's territory. (*IPU supra*)

29. The critical role played by MPs in India in the promotion of national integration and in preventing divisive and obstructive elements from threatening the peace and stability of the nation has to be understood in the context of the many complexities and diversities of India. These relate to language, religion, resource endowments and the quality and pace of development. The people of India are held together by the shared experience and involvement in the conscious and continuous attempt to resolve internal differences through political means. (*Navin Suri: Indira Gandhi Speaks, A compilation of quotations of Indira Gandhi, Milap Publications, 1984*). Members of Parliament are the true representatives of the people and it is the people's interests which they articulate in the context of a larger and broader national vision. (*Address by Dr. Shanker Dayal Sharma, President of India on the occasion of the 50th anniversary of the first sitting of the constituent assembly. Parliament House, New Delhi Monday, December 9, 1996*).

C. **Council of Ministers**

30. Article 74(1) of the Constitution provides for a Council of Ministers with the Prime Minister as its head to aid and advise the President of India, who exercises his functions in accordance with such advice of the Council of Ministers. The

7

real executive power is thus vested in the Council of Ministers with the Prime Minister as its head.

31. The Council of Ministers (generally referred to as the 'Cabinet') headed by the Prime Minister, as a collective body, are responsible to the House of the People (Lok Sabha) for the decisions taken by the government. (*G. C. Malhotra: Cabinet Responsibility to Legislature; Lok Sabha Secretariat, Metropolitan, 2004, p.3.*) The Council of Ministers headed by the Prime Minister is the highest decision-making body of the executive within the Indian polity and its members are among the highest ranking officials in India.

32. Members of the Council of Ministers ("Ministers") hold office at the pleasure of the President, and the Council of Ministers is collectively responsible to the Lok Sabha. Under Article 75 of the Constitution, prior to entering Office, Ministers are administered the oath of office and secrecy by the President of India. The Constitution vests in the President of India all the executive powers of the Central Government. The President appoints as Prime Minister the person most likely to command the support of the majority in the Lok Sabha (usually the leader of the majority party or coalition). The President then appoints the other members of the Cabinet, distributing portfolios to them on the advice of the Prime Minister. The present Cabinet of India comprises the Prime Minister and 35 Cabinet Ministers.

33. All the members of the Union Council of Ministers are required to be MPs. If they are not, they must be elected either to the Lok Sabha or the Rajya Sabha within a period of six months from the time they assume their respective offices. Consequently, the role and duties of MPs discussed herein above, apply to such Ministers *mutatis mutandis*. Further, the Ministers are not only the heads of the executive departments of the Union Government, but are generally also the most important members of the ruling party and/or the coalition in the Parliament.

34. The functions of the Council of Ministers are mainly to aid and advise the President in the exercise of his functions. The Council is, in fact, charged with the duty of administering the affairs of the Union Government, which is divided

into various ministries. Since a ministry is the highest organ of the Government of India, it determines all the policies relating to the country's administration in relation to the tasks allotted to that ministry.

35.     Thus, each member of the Council of Ministers is appointed to head one of the central ministries of the Government of India. Their title is thus the "Union Minister" of that particular Ministry

## II

## Minister Nath's Official Role and Conduct

A.  **Minister Nath's Presence at Gurudwara Rakab Ganj Sahib on November 1, 1984 as a Member of Parliament and Member of the Indian National Congress Party.**

36.     I understand, based on my reading of Minister Nath's January 2004 Affidavit submitted in connection with the Nanavati Commission, that Minister Nath was present at the Gurudwara Rakab Ganj Sahib site on November 1, 1984. I understand that Minister Nath learned that there was violence taking place in and around that site, and that as a senior and responsible MP and a member of the Congress Party, he decided to go to the site. I understand that he tried to persuade the crowd to disperse and not to get agitated and take the law into their hands, and that he stayed at the site until the Commissioner of Police and additional para-military forces arrived. (*Source: January 2004 Nath Affidavit*).

37.     In his role as a parliamentarian, Minister Nath's presence at the scene of violence in 1984 cannot be analysed outside the context of the integrative role played by the Parliament in the Indian context. The Indian Parliament is constituted of elected individuals representing over a billion citizens and plays a central role to ensure adequate political representation for the people who would otherwise remain vulnerable to divisive and obstructive forces. (Source: *P. M. Sayeed: Parliament – a multi-functional institution; in G. C. Malhotra, ed., Fifty Years of Indian Parliament; pp.31-*

*33*). The situation at the scene of violence represented a threat to the peace and unity of the nation and Minister Nath's presence there was consistent with his overall responsibilities as an elected MP to act as an intermediary to solve the conflict in question.

38. Thus, as a serving MP, from the political party which was in power, Minister Nath's stated presence at the scene of violence around Gurudwara Rakab Ganj Sahib in the aftermath of the assassination of Smt. Indira Gandhi a day earlier, as well as his stated conduct at that scene, is entirely consistent with his duties as an MP towards the parliament, the people of India, and the nation as a whole.

**B.     Minister Nath's Official Duties as a Member of Parliament, Member of the Indian National Congress Party, Union Minister and member of the Council of Ministers, Since the Commencement of this Action.**

39. Minister Nath has been a member of the Council of Ministers since 1991. In April 2010, at the time this action was commenced, Minister Nath served as the Union Minister of Road Transport & Highways. Since January 2011, Minister Nath has served as the Union Urban Development Minister. As a Union Minister, he is responsible for any act of failure in all the policies relating to the ministry under his charge. In case of any lapse, he is individually responsible to the Parliament.

40. In his role as the Union Minister for Road Transport & Highways, Minister Nath was directly responsible for the successful implementation and execution of the following key duties and responsibilities of the Ministry of Road Transport & Highways (which is broadly divided into two sections, viz., Roads Wing and Transport Wing).

41. In connection with the Roads Wing, his responsibilities included:

- Planning, Development and Maintenance of National Highways Network in the country;
- Extending technical and financial support to State Governments for the development of state roads and the roads of inter-state connectivity and economic importance;
- Evolving standard specifications for roads and bridges in the country; and
- Serving as a repository of technical knowledge on roads and bridges.

42.   In connection with the Transport Wing, his responsibilities included:

- Motor Vehicle legislation;
- Administration of the Motor Vehicles Act, 1988;
- Taxation of motor vehicles;
- Compulsory insurance of motor vehicles;
- Administration of the Road Transport Corporations Act, 1950;
- Promotion of Transport Co-operatives in the field of motor transport;
- Evolving road safety standards in the form of a National Policy on Road Safety and preparation and implementation of Annual Road Safety Plans;
- Collecting, compiling and analyzing road accident statistics and taking steps for developing a Road Safety Culture in the country by involving the members of public and organizing various awareness campaigns; and
- Providing grants-in-aid to Non-Governmental Organisations in accordance with the laid down guidelines.

(*Source – Annual Report 2008-09, Ministry of Road Transport & Highways, Government of India*).

43.   In his role as Union Minister for Urban Development, Minister Nath is responsible for matters pertaining to housing and urban development at the federal

level. As a constitutional matter, matters of housing and urban development are assigned by the Constitution to the State governments, and the Urban Development Ministry of the Government of India is limited to such matters in Delhi and other Union Territories. Notwithstanding this limitation, the Urban Development Ministry also plays a crucial role and exercises significant influence on the policies and programmes of the country as a whole. National policy issues (pertaining to housing and urban development) are determined by the Government of India through the Urban Development Ministry which: allocates resources to the State governments through various centrally sponsored schemes; provides finances through national financial institutions; and supports various external assistance programmes for housing and urban development projects in the country as a whole.

44. As the Urban Development Minister, Minister Nath is directly responsible for the successful implementation and execution of the following businesses which have been allocated to the Ministry of Urban Development:

- Properties of the Union, whether lands or buildings, with certain exceptions;
- All Government Civil Works and Buildings including those of Union territories excluding Roads etc;
- Horticulture operations;
- Central Public Works Organisation;
- Administration of Government estates including Government Hostels under the control of the Ministry;
- Stationery and Printing for the Government of India including official publications;
- Planning and coordination of urban transport systems with technical planning of rail based systems;
- Fixing of maximum and minimum rates and fares for rail-based urban transport systems;
- Town and Country Planning matters;

- Schemes of large scale acquisition, development and disposal of land in Delhi;
- Delhi Development Authority;
- Erection of memorials in honour of freedom fighters;
- Development of Government Colonies; and
- All matters relating to Planning and Development of the National Capital Region, etc.

45. As stated hereinabove, Minister Nath, in his capacity as a Union Minister, is ultimately responsible for any act of failure in the policies relating to the department under his charge. In case of any lapse, he is individually responsible to the Parliament. As a consequence, Minister Nath is directly responsible for giving effect to national and international plans, policies, agreements, collaborations, partnerships etc. entered into by the his ministry.

46. I am given to understand that in 2005 a Memorandum of Cooperation (Memorandum) was signed between the Department of Road Transport & Highways of the Ministry of Shipping, Road Transport & Highways, Government of India and the Department of Transportation of the United States of America. Since the Memorandum represents a collaboration, between Minister Nath's earlier ministry and the United States, it fell clearly within his duties to give effect to the objectives set out in the Memorandum.

47. Further, given his responsibility and duty to give effect to the plans, policies and projects undertaken by the ministry in his charge, Minister Nath was, as Union Minister for Road Transport & Highways, also responsible for identifying sources of funding, whether from multinational financial organizations, private financial organizations, national and international private sources of investments and/or inter-governmental assistance. Examples would include the World Bank funding assistance being rendered to the Ministry of Road Transport & Highways, partnering with national and global entities to give effect to Public-Private Partnership (PPP) models for various infrastructure projects and plans being undertaken by the Ministry

of Road Transport & Highways; funding from the Central Bank of Japan for the Delhi Metro Rail project which is under the overall supervision of the Ministry of Urban Development. In addition, Minister Nath, in his current capacity as the Union Urban Development Minister is also responsible for the successful implementation of Metro and Rapid Rail projects being undertaken in major Indian cities, a National Urban Renewal Mission etc. Since these projects are PPP's, it falls within Minister Nath's overall responsibility to represent India's interest and source funds for the implementation of the same.

48.     As a Union Minister tasked with the overall responsibility of a ministry of the Government of India, Minister Nath is often required to travel to other countries to give effect to various plans, schemes, projects being implemented by his ministry, often at the invitation of foreign governments. His visits to the United States and other countries in his official capacity is but a logical extension of his responsibility as a minister as well as his responsibilities in carrying out the objectives of the Memorandum. For example, I am given to understand that during his tenure as the Union Minister for Commerce & Industry (2004-2009), Minister Nath represented India in crucial rounds of the World Trade Organization (WTO) talks and was India's key representative at the World Economic Forum held at Davos during that period. Similarly, in his capacity as the Union Minister for Road Transport & Highways (2009-January 2011) and his current role as the Union Urban Development Minister, he is often required to travel to other countries and/or represent India's interests before international inter-governmental organizations and foreign governments.

## III

## Conclusion

Based on the above, I conclude as follows:

(a)     Minister Nath's presence at the scene of violence in 1984 was in pursuance of his then-role as a Member of Parliament. In this role, Minister Nath was directly accountable to the nation as a whole. As a Member of Parliament, he plays a

critical integrative role in a nation as diverse as India, to prevent divisive and obstructive elements from threatening the peace and stability of the nation; and

(b)   As a member of the Council of Ministers of the Government of India, Minister Nath is a high-ranking official with national-level responsibilities. He is ultimately responsible for the operation and management of the ministry under his charge. His responsibilities often require him to travel to, and work with, foreign governments including the United States, often at the invitation of such foreign governments, and to work with non-governmental multinational entities such as the IMF, World Bank, and the WTO.

_____
G.C. Malhotra

SWORN ~~~~~~~~~
SHALL ~~~~~~~~~ TY
OF THE CONTENTS OF THIS DOCUMENT

***************



भारत सरकार GOVERNMENT OF INDIA
अपोस्टिल / APOSTILLE
(Convention de La Haye du 5 octobre 1961)

Country    INDIA

**This public document of the type**
AFFIDAVITS

is issued to    G.C. MALHOTRA

has been signed by    BHUPINDER SINGH

with the seal / stamp of    SDM, CHANAKYA PURI, JAM NAGAR HOUSE, NEW DELHI, DELHI

**Certified by**
Section Officer(OI) MINISTRY OF EXTERNAL AFFAIRS
on 20-Jun-2011   at   NEW DELHI, INDIA
Reference no. DLND0003372911




SASI LEACHIOUS K.P.
शशि लीचियस के.पी.
अनुभाग अधिकारी (ओ.आई.)
Section Officer (O.I.)
विदेश मंत्रालय, नई दिल्ली
Ministry of External Affairs
New Delhi

# APPENDIX - I

## LIST OF PUBLICATIONS

**A)  Books Authored:**

1. G.C. Malhotra, *Motions of Confidence and No-confidence*, 1998 Metropolitan Book Pvt. Ltd., New Delhi

2. G.C. Malhotra, *Cabinet Responsibility to Legislature*, 2004 Metropolitan Book Pvt. Ltd., New Delhi

3. *G.C. Malhotra, Anti-Defection Law in India and the Commonwealth*, 2005, Metropolitan Book Pvt. Ltd., New Delhi

**B)  Books Edited/Translated:**

1. G.C. Malhotra, Editor, Fifth revised edition of Kaul and Shakdher's *"Practice and Procedure of Parliament"*, 2001, Metropolitan Book Pvt. Ltd., New Delhi

2. G.C. Malhotra; Translator and Editor of the Hindi version of Fifth revised Edition of Kaul and Shakdher's "Practice and Procedure of Parliament, 2001 titled *"Sansadiya Padhati Aur Prakriya, 2002"*, Metropolitan Book Pvt. Ltd., New Delhi

3. G.C. Malhotra, Editor, *"Parliament of India"* and of its Hindi version *"Bharat ki Sansad"*, Lok Sabha Secretariat, Printed by Jainco Art India, New Delhi

4. G.C. Malhotra, Editor, *"Fifty Years of Indian Parliament, 2002"* and its Hindi version *"Bharatiya Sansad Ke Pachaas Varsh, 2002"*, Metropolitan Book Pvt. Ltd., New Delhi

5. G.C. Malhotra, Editor, *Conferences of Presiding Officers of Legislative Bodies in India,* 1921-2001, Lok Sabha Secretariat, 2002

6. G.C. Malhotra, Co-Editor , *"Delhi Metropolitan Council: A Study, 1966-89"*, Metropolitan Council, Delhi, 1989, Printed at Gayatri Offset Press, NOIDA, India

## C) ARTICLES

1. G.C. Malhotra: *'Public Accounts Committee: Its Role in Ensuring Executive Accountability'*, pp.50-78 in B.P. Mathur (Editor): Public Audit, Good Governance and Accountability; August 2000; Mudrit Publishers, New Delhi

2. G.C. Malhotra: *'A Government Falls; The collapse of a coalition'*; in The Parliamentarian, July 1999 LXXX No.3, Journal of the Parliaments of the Commonwealth; United Kingdom, London

3. G.C. Malhotra: *'The Ten Motions of Confidence'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLIV No.2, June 1998, CBS Publishers and Distributors, New Delhi

4. G.C. Malhotra: *'Parliamentary Committees with special reference to Departmentally Related Standing Committees'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLIV No.3, September 1998, CBS Publishers and Distributors, New Delhi

5. G.C. Malhotra: *'Conference on Parliament and the Media: Building an Effective Relationship'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLVI No.2, June 2000, CBS Publishers and Distributors, New Delhi

6. G.C. Malhotra: *'The Parliament Estate'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLVI No.3, September 2000, CBS Publishers and Distributors, New Delhi

7. G.C. Malhotra: *'Election of Speaker in UK and India'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLVI No.4, September 2000, CBS Publishers and Distributors, New Delhi

8. G.C. Malhotra: *'Safeguarding Democracy: Role of Opposition in Indian Parliament'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLVII No.2, June 2001, CBS Publishers and Distributors, New Delhi

9. G.C. Malhotra: *'Freedom of Speech of Members and the Press'* pp.57-70 in Orissa Legislative Assembly, Bhubhaneswar: Press Freedom and Members' Privilege, December 2002

10. G.C. Malhotra: *'Members of the Thirteenth Lok Sabha: A Socio- Economic Study'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLIX No.2, June 2003, CBS Publishers and Distributors, New Delhi

11. G.C. Malhotra: *'Legislative Deadlock in Bicameral Legislatures; Joint Sitting of the two Houses of Indian Parliament on the Prevention of Terrorism Bill, 2002'* in The Journal of Parliamentary Information, Lok Sabha Secretariat, Volume XLIX No.1, March 2003, CBS Publishers and Distributors, New Delhi

\*\*\*\*\*\*\*\*\*