UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SIKHS FOR JUSTICE, on behalf of
deceased and injured members of the
Sikh community, ET AL.,

                    Plaintiffs,                    10 Civ. 2940

    -against-                                      OPINION

KAMAL NATH, and
INDIAN NATIONAL CONGRESS PARTY,

                    Defendants,

      -and-

INDIAN LEGAL HERITAGE,

                    Intervenor.

------------------------------------X

A P P E A R A N C E S:

          Attorney for Plaintiffs

          MICHAEL F. FITZGERALD, ESQ.
          100 Park Avenue, Suite 1600
          New York, NY  10017

          Attorneys for Defendant Kamal Nath

          PILLSBURY WINTHROP SHAW PITTMAN LLP
          1540 Broadway
          New York, NY  10036
          By:  David M. Lindley, Esq.
               Ranah L. Esmaili, Esq.
               Anne C. Lefever, Esq.
               Tameka M. Beckford-Young, Esq.

**Sweet D. J.**

Defendant Kamal Nath ("Nath" or the "Defendant") has moved pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(5) to dismiss the First Amended Complaint of plaintiffs Sikhs for Justice and seven individuals (collectively, the "Plaintiffs") alleging violations of the Alien Tort Claims Act ("ATCA") and the Torture Victim Protection Act ("TVPA").

Upon the facts and conclusions set forth below, the motion is granted for failure to affect service and lack of personal jurisdiction.

## I. Prior Proceedings

The original Complaint in this action was filed on April 6, 2010. It alleged nine claims against Nath for violations of international law under the ATCA and TVPA and under state law for wrongful death, negligence, public nuisance, battery, intentional infliction of emotional distress and negligent infliction of emotional distress. (Dkt. No. 1.)

1

On March 1, 2011, Plaintiffs filed an Amended Complaint adding plaintiffs and defendant Congress Party (the "Congress Party") and dropping all state law claims. (Dkt. No. 16.) As to Defendant Nath, Plaintiffs allege claims of genocide, rape, torture, summary executions, extrajudicial killings, and crimes against humanity under the ATCA (Am. Compl. ¶¶ 160-65); torture and extrajudicial killings under the TVPA (Am. Compl. ¶¶ 166-73); and aiding and abetting the commission of those violations under the ATCA and TVPA (Am. Compl. ¶¶ 174-79).

With regard to the Congress Party, Plaintiffs allege claims under the ATCA for genocide, rape, torture, summary executions, and extrajudicial killings as well as aiding and abetting the commission and conspiracy to commit those violations under both the ATCA and TVPA. (Am. Compl. ¶¶ 146-59.) Plaintiffs allege that the Congress Party was the ruling party of India in October and November of 1984, "virtually had complete control over the governance of India" at that time, and "[a]s the ruling political party of India nationally and locally, [the Congress Party] was able to pursue a policy of genocide against the Sikhs under color of state law and with the

2

apparent or actual authority of the Government of India." (Am. Compl. ¶¶ 28-30, 108.)

The Amended Complaint alleges that the individually-named Plaintiffs and the individuals they represent were present and/or injured in states throughout India when officials organized, armed and led attacks on Sikhs. (Am. Compl. ¶¶ 34-66, 73-106.)  Nath appears in the Amended Complaint in connection with one site of violence in New Delhi on November 1, 1984. (Am. Compl. ¶¶ 37-39, 66-72.)  Plaintiffs additionally allege that Nath aided and abetted the violence in India by his presence and participation at a meeting of the Congress Party where the violence was planned.  (Am. Compl. ¶¶ 37-39.)

The instant motion asserting lack of jurisdiction based upon failure of service, immunity, lack of standing, and the act of state doctrine was heard and marked fully submitted on September 21, 2011.

## II. The Facts

The parties have submitted affidavits setting forth the facts which are not disputed except as noted below.

3

In India in 1984, the assassination of former Prime Minister Indira Gandhi sparked violence throughout India, during which a large number of Sikhs were killed and injured.  Nath has, throughout the relevant period, been an elected Member of Parliament or Union Minister for the Government of India.

On November 1, 1984, Nath went to one of the sites of violence in New Delhi, Gurudware Rakab Ganj Sahib.

Over the years, the Indian Government, headed by various political party leadership, including political parties other than the Congress Party, appointed various commissions to look into these events.  In 2005, Nath's presence at Gurudware Rakab Ganj Sahib was considered by one such commission, the Nanavati Commission.  That Commission concluded that it was "[i]n absence of better evidence, it is not possible for the Commission to say that [Nath] had in any manner instigated the mob or that he was involved in the attack on the Gurudware." Justice Nanavati Commission of Inquiry: 1984 Anti-Sikh Riots at 141 (Sept. 2, 2005), available at

http://www.mha.nic.in/pdfs/nanavati-I_eng.pdf.[1]       No     court
proceedings relating to the Anti-Sikh Riots of 1984 have been
initiated against Nath in India or elsewhere other than the
instant action.

In the last six years, Nath has taken thirteen trips
to the United States (eight of which were to New York) in his
official capacity.  He has submitted by affidavit that he has
not, in that time, conducted any business other than in his
official capacity, derived revenue from goods used or consumed
or services rendered, had any bank accounts, employed anyone,
institute any legal actions, filed any tax returns, owned
property, maintained offices, or had a mailing address, in New
York or the United States.  (Nath Aff. ¶¶ 14-16 (Dkt. No. 33).)
The Plaintiffs note that he has authored a book published by a
New York firm.  Nath submits that as of the date of his
affidavit, he had collected no royalties on the book.  (Id. at ¶
15.)

Nath's two most recent trips to the United States were
in September 2009 and April 2010.

---

[1]     This report is quoted and incorporated by reference in the Amended
Complaint, though not referenced by name.  (Am. Compl.  ¶¶ 66-72.)

In September 2009, Nath traveled to New York and met with the President of the World Bank in India and other World Bank officials and participated in a discussion with a special advisor to the Secretary General of the United Nations and the United States former ambassador to India.

Nath came to New York again in April 2010. He attended and gave a keynote address at the 2010 Global Construction Summit, an international conference organized by the publisher McGraw-Hill and attended by numerous foreign government officials and representatives of the U.S. International Trade Commission, the U.S. Federal Environmental Executive, the US-Indian Business Council ("USIBC"), and the US-India CEO Forum. He also attended a roundtable organized by the Indian Embassy and the USIBC on that trip.

On August 5, 2010, Plaintiffs filed with this Court an affidavit of service by Ms. Yoselin Genao ("Genao") stating that she served Nath with process on April 6, 2010 on the street in front of 3 East 64th Street, the Indian Consulate. (Dkt. No. 3.) At that time, Plaintiffs were pro se.

6

Nath was at the Indian Consulate in April 2010 to give a press conference and lecture, but was not approached or handed papers by anyone on the street, either upon arrival or departure from the Consulate. Nath arrived at the Consulate at approximately 6:30 p.m. No witness observed any person approach or hand anything to Nath. At approximately 7 p.m. after Nath had gone inside the Consulate, Genao spoke to the Consulate security guard about serving Nath. The guard directed her to a person referred to as Sandeep. Genao handed the summons and complaint to the man referred to as Sandeep, who looked at them, refused to accept them, and threw the envelope in a trash bin on the sidewalk. Genao retrieved the summons and complaint and then left the area after making a telephone call.

Inside the Consulate Nath held a press conference and a member of the press corp handed him a copy of the same summons and complaint which Genao had sought to serve outside the Consulate. Nath looked at and commented on the papers he had been given.

## III. The Plaintiffs Did Not Effect Service On Nath

"'Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.'" Dynegy Midstream Servs. v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006) (quoting Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104 (1987)). On a motion to dismiss pursuant to Rule 12(b)(5) for deficient service of process, "the plaintiff bears the burden of establishing that service was sufficient." Khan v. Khan, 360 Fed. Appx. 202, 203 (2d Cir. 2010) (citing Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)). Plaintiff must meet this burden by making a prima facie case of proper service "through specific factual allegations and any supporting materials." Kwon v. Yun, No. 05 Civ. 1142, 2006 WL 416375, at *2 (S.D.N.Y. Feb. 21, 2006) (citations omitted); see also Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir. 1998). In this regard, conclusory statements are not sufficient to overcome a defendant's sworn affidavit that service was improper. Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002). In resolving a Rule 12(b)(5) motion to dismiss for insufficient service of process, "a Court must look to matters outside the complaint to determine whether it has jurisdiction." Mende v. Milestone Tech., Inc., 269 F.Supp.2d

246, 251 (S.D.N.Y. 2003) (quoting Darden, 191 F. Supp. 2d at 387).

Under Rule 4 of the Federal Rules of Civil Procedure, service may be affected by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>
>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).   See also N.Y.C.P.L.R. § 308(2) (permitting service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business").

9

No one handed the summons or complaint to Nath outside of the Indian Consulate on April 6, 2010.   Service was thus not affected under Rule 4(e)(2)(A).

The Consulate was not Nath's place of business or dwelling or abode.   Nath has stated in a sworn statement that the Consulate was not his place of business.   (Nath Aff. ¶ 9.) Plaintiffs have only countered with unsupported assertions that that the Consulate should be considered Nath's place of business because Nath's role in New York is for the state of India. (Pls. Opp'n 23 n.9.)   Plaintiffs have thus not satisfied their burden.

Nath has likewise denied granting authority to any agent to receive service of process (Nath Aff. ¶ 9) and no evidence has established that any individual was authorized to accept service on Nath's behalf.   An agent's authority to accept service may be implied from the relationship between principal and agent.   See Fed. R. Civ. P. 4(e)(2)(C).   However, a party "cannot fabricate such implied authority from whole cloth to cure a deficient service, but must present facts and circumstances showing the proper relationship between the

10

defendant and its alleged agent." U.S. v. Ziegler Bolt and Parts Co., 111 F.3d 878, 881 (Fed. Cir. 1997). Moreover, "an agent's authority to act cannot be established solely from the agent's actions; the authority must be established by an act of the principal." Id. at 882. In absence of actual appointment, service of process is ineffective. Plaintiffs have not submitted evidence that Nath appointed the man referred to as Sandeep was his agent to receive service of process. The reported statement of the Consulate guard that Sandeep was authorized, and his opening and reading of the documents, is insufficient to overcome Nath's sworn statement to the contrary.

Nath's receipt of the complaint during a press conference inside the Indian Consulate does not constitute proper service under the Vienna Convention. "Consular premises [are] inviolable to the extent provided in this Article." Vienna Convention on Consular Relations, art. 31, Apr. 24, 1963, 21 U.S.T. 77 (entered into force in U.S. Dec. 13, 1972). Under the Vienna convention, "[s]ervice of process at . . . consular premises is prohibited." Restatement (Third) of Foreign Relations § 466, Rpr. n.2.

11

Plaintiffs have contended that they have substantially complied with the service requirements. (Pls. Opp'n 23.) However, Genao's actions do not constitute substantial compliance, particularly when Plaintiffs only attempted Hague Convention service after the 120-day period to serve. Fed. R. Civ. P. Rule 4(m) ("If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.") Plaintiffs have put forth no good cause for their failure to serve Nath or attempt Hague Convention service during the 120-day period. Plaintiffs did not seek an extension of the time to serve or request the Court to direct an alternate means of service. The difficulty of serving a defendant abroad is alone insufficient to constitute good cause for failure to serve. See Shaw v. Rolex Watch U.S.A., Inc., 745 F. Supp. 982, 987 (S.D.N.Y. 1990) (even if service on foreign defendant was "an arduous and time-consuming process, [plaintiff] was under the obligation to serve" the defendant).

12

Further, actual notice cannot "cure a failure to comply with the statutory requirements for serving process." Sartor v. Toussaint, 70 Fed. Appx. 11, 13 (2d Cir. 2002) (citations omitted). Nath had actual notice of this action, a point he does not contest, but that does not, as a matter of law, waive the service defect.

## IV. Plaintiffs Have Not Established Personal Jurisdiction Over Nath

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "'the plaintiff bears the burden of showing that the court has jurisdiction over the defendant.'" Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 240 (2d Cir. 1999) (quoting Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)).

A plaintiff may carry this burden "by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction." Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 184 (2d Cir.1998) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.1990)). A plaintiff can make this showing through his "own affidavits and supporting materials[,]" Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981), containing "an averment of facts that, if credited . . ., would suffice to establish jurisdiction over the defendant." Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996) (quoting Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197

(2d Cir. 1990)). "[W]here the issue is addressed on
affidavits, all allegations are construed in the light
most favorable to the plaintiff and doubts are
resolved in the plaintiff's favor [.]" A.I. Trade
Finance, Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d
Cir. 1993).

Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir.

2001); see also Distefano v. Carozzi N. Am., Inc., 286 F.3d 81,

84 (2d Cir. 2001) (noting that ordinarily, on a motion to

dismiss for lack of personal jurisdiction, the plaintiff bears

the burden of establishing that the court has jurisdiction over

the defendant but when a court relies merely on pleadings and

affidavits, plaintiff need only make a prima facie case showing

that the court has personal jurisdiction over the defendant, and

court must construe pleadings and affidavits in the light most

favorable to plaintiff).


        While proper service of a summons and complaint in New

York would be sufficient to vest the Court with personal

jurisdiction over the defendant as to claims of the violation of

certain universally accepted norms of international human rights

law under the ATCA, Doe v. Constant, 354 Fed. Appx. 543, 546 (2d

Cir. 2009); Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 104

(2d Cir. 2000); Kadic v. Karadzic, 70 F.3d 232, 246-48 (2d Cir.

1995); Filartiga v. Pena-Irala, 630 F.2d 876, 884-86 (2d Cir. 1980); such service was not affected here.

Under the Federal Rules of Civil Procedure, a court may exercise jurisdiction over any defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located," Fed. R. Civ. P. 4(k)(1)(a), provided that such exercise comports with the due process.

The first question is therefore whether Nath may be subjected to the jurisdiction of the courts of the State of New York.  Under New York Civil Practice Law and Rules ("NYCPLR") § 301 a defendant has sufficient contacts with New York and is "'doing business' and is therefore 'present' in New York and subject to personal jurisdiction with respect to any cause of action, related or unrelated to the New York contacts, if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Wiwa, 226 F.3d 88 at 95 (internal quotation marks omitted).

> New York courts have focused on several factors to
> support a finding that a defendant was "doing
> business," including "the existence of an office in
> New York; the solicitation of business in New York;
> the presence of bank accounts or other property in New

15

> York; and the presence of employees or agents in New
> York."  Solicitation alone will not ordinarily show
> that a defendant is "doing business" in New York, but
> where combined with evidence that the defendant
> "engages in other activities of substance in the
> state, then personal jurisdiction may properly be
> found to exist."

Schultz v. Safra Nat. Bank of N.Y., 377 Fed. Appx. 101, 102-03

(quoting Landoil Res. Corp. v. Alexander & Alexander Serv. Inc.,

918 F.2d 1039, 1043-44 (2d Cir. 1990)); see also Beacon Enters.,

Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983) ("Under the

New York courts' interpretation of section 301, a non-

domiciliary subjects herself to personal jurisdiction in New

York with respect to any cause of action if she is engaged in

such a continuous and systematic course of 'doing business' here

as to warrant a finding of her 'presence' in this jurisdiction."

(citations and internal quotation marks omitted)); Arquest, Inc.

v. Kimberly-Clark Worldwide, Inc., No. 07 Civ. 11202, 2008 WL

2971775, at *5 (S.D.N.Y. July 31, 2008).


        If personal jurisdiction exists under New York law, a

court must ensure its exercise comports with federal due

process.  Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez,

305 F.3d 120, 127 (2d Cir. 2002).


                              16

To do so, we undertake an analysis consisting of two components: the "minimum contacts" test and the "reasonableness" inquiry.

The first of these tests asks whether the defendant "has 'certain minimum contacts [with the forum] . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Where "the claim arises out of, or relates to, the defendant's contacts with the forum"-i.e., specific jurisdiction-minimum contacts exist "where the defendant 'purposefully availed' itself of the privilege of doing business in the forum and could foresee being 'haled into court' there." A state may assert "general jurisdiction"-i.e., jurisdiction irrespective of whether the claim arises from or relates to the defendant's forum contacts-only where these contacts are "continuous and systematic."

. . .

The second part of the jurisdictional analysis asks "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'-that is, whether it is reasonable under the circumstances of the particular case." Courts are to consider five factors in evaluating reasonableness: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Where a plaintiff makes the threshold showing of the minimum contacts required for the first test, a defendant must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."


Bank Brussels Lambert, 305 F.3d at 127-29 (citations omitted).

In assessing personal jurisdiction over a foreign defendant,

17

courts look to the totality of defendants' contacts with the forum state. See Best Van Lines Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) ("A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the quality and nature of the defendant's contacts with the forum state under a totality of the circumstances test." (citations and quotation marks omitted)).

The Amended Complaint makes a single allegation regarding personal jurisdiction over Nath: "This Court has personal jurisdiction of the Defendants pursuant to Rule 4, Fed. R. Civ. P. and N.Y.C.P.L.R. 301." (Am. Compl. ¶ 7.) Plaintiffs provide no additional factual averments as to Nath's contacts with New York or the United States except with regard to his presence and conduct in April 2010 as previously discussed and stated in Genao's affidavit, to point to Nath's book deal, and to provide Nath's comment to reporters during the April 2010 trip that "I have been to New York, I don't know how many times, three times a year for so many years . . . ." (Fitzgerald Aff. Ex. 5 (Dkt. No. 43).)

18

In addition, Nath's contacts as an official for the Indian Government should not alone serve to establish person jurisdiction over him. See Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 937 F.2d 44, 50-52 (2d Cir. 1991) ("The district court concluded that all of the above activities, when viewed as a whole, indicate that the PLO is engaged in business in New York State. This analysis, however, fails to distinguish those activities the PLO conducts as an observer at the UN from those activities it conducts for other purposes. In our view, only those activities not conducted in furtherance of the PLO's observer status may properly be considered as a basis of jurisdiction."); In Re Terrorist Attacks on Sept. 11, 2001, 718 F. Supp. 2d 456, 476 (S.D.N.Y. 2010); cf. RSM Prod. Corp v. Fridman, 643 F. Supp. 2d 382, 400 ("An individual cannot be subject to jurisdiction under C.P.L.R. § 301 unless he is doing business in New York on his own behalf rather than on behalf of a corporation." (emphasis in original) (citing Brinkmann v. Adrian Carriers, Inc., 29 A.D.3d 615, 815 N.Y.S.2d 196, 199 (2006); Black v. USA Travel Auth., Inc., No. 99 Civ. 11278, 2001 WL 761070, at *4 (S.D.N.Y. July 6, 2001) ("It is well-settled that 'where a corporation is doing business in New York, an officer of the corporation does not subject himself individually

19

to 301 jurisdiction unless he is doing business in [New York] individually.'" (alteration in original) (citation omitted))).

Nath has no office in New York, no bank accounts or other property in New York, an no employees or agents in New York. Defendant had no purely personal visits to the United States in the six years prior to the commencement of this action. While he had a couple of free days during his official visits to the United States, these were minimal (no more than seven in the six years before this suit) (Nath Aff. ¶ 13) and are insufficiently permanent or continuous to establish general jurisdiction under NYCPLR § 301. See Wiwa, 226 F.3d at 95 (contacts must be more than occasional or casual and instead evince "a fair measure of permanence and continuity"); Landoil Resources Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043-46 & n.10 (finding thirteen business trips over the course of eighteen months insufficient to establish systematic and continuous presence required for jurisdiction under NYCPLR § 301 and noting that "for example, renting a hotel room to solicit business on a systematic and regular basis might be the functional equivalent of an office in New York and therefore be sufficient to establish presence within the state. However,

20

something more than the sporadic presence which this record discloses is required.").

Plaintiffs have additionally pointed to Nath's book deal (Pls. Opp'n 6), but Nath has submitted a sworn statement that he has yet to receive any royalties from the book (Nath Aff. ¶ 14), and Plaintiffs have provided not averments as to additional contacts Nath might have had with New York due to the book other than that its publisher, McGraw-Hill, is located here.  Plaintiffs also refer to Nath's attendance at a meeting in New York where an admission fee was charged (Pl. Opp. at 6) but have not alleged or submitted evidence to suggest that Nath received a portion of those fees to counter Nath's sworn statement that he has received no income from business in New York.  (Nath Aff. ¶ 14.)  Regardless, while these activities could be understood under New York's pragmatic standard as solicitation, taken as a whole, the record does not establish contacts sufficiently substantial or continuous for personal jurisdiction to exist.

Accordingly, Defendant is not subject to general jurisdiction in New York under NYCPLR § 301.

Because the Court finds no basis for general jurisdiction over Nath, it does not address the constitutional requirements for personal jurisdiction.

## V.   The Motion To Dismiss On The Remaining Grounds Advanced By Nath Is Denied Without Prejudice

In the absence of effective service and personal jurisdiction, it is inappropriate to analyze the remaining grounds for dismissal advanced by Nath.

## VI. Conclusion

For the reasons set forth above, the Amended Complaint as to Nath is dismissed without prejudice.

It is so ordered.

New York, NY
March    , 2012

ROBERT W. SWEET
U.S.D.J.

22