THE LAW FIRM OF RAVI BATRA, P.C.
The Batra Building
142 Lexington Avenue
New York, New York 10016
(212) 545-1993
(212) 545-0967 (fax)
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*Attorneys for Defendant Indian National Congress Party, a/k/a, "CONGRESS (I)"*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

SIKHS FOR JUSTICE INC on behalf of deceased and injured members of the Sikh community, JASBIR SINGH, MOHENDER SINGH, Individually and on behalf of his deceased father: SARDAR DARSHAN SINGH, *et. al.*,

*Plaintiffs*,

- against -

INDIAN NATIONAL CONGRESS PARTY, a/k/a, "CONGRESS (I)," *et. al.*,

*Defendants*,

- and -

INDIAN LEGAL HERITAGE ,

*Intervenor*.

**Civil Action No.
10 Civ. 2940 (RWS)**

# MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DEFENDANT INDIAN NATIONAL CONGRESS PARTY, a/k/a, "CONGRESS (I)" TO DISMISS THE SECOND AMENDED COMPLAINT

*Of counsel*:
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*On the brief*

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I: THE COURT LACKS SUBJECT MATTER JURISDICTION, MANDATING DISMISSAL PURSUANT TO FED. R CIV. P. 12(b)(1) AND 12(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . 2

- *THERE IS NO SUBJECT MATTER JURISDICTION FOR 'FOREIGN CUBED' EXTRATERRITORIAL CLAIMS UNDER ATS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
- *"SIKHS FOR JUSTICE" IS NOT A PROPER PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)* . . . . . . . . . . . . . . . . . . . . 11
- *NONE OF THE PLAINTIFFS IS PROPERLY A "LEGAL REPRESENTATIVE" REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
- *THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO BASIS FOR EQUITABLE TOLLING* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT II: THE SAC FAILS TO STATE A CLAIM REQUIRING DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6) . . . . . . . . . . . . . 20

POINT III: PLAINTIFFS SFJ, JASBIR SINGH AND MOHENDER SINGH DISREGARDED THE IMPORT OF JUDGE SWEET'S DISMISSAL AND STAY (D.E. 91) . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

## TABLE OF AUTHORITIES

**FEDERAL CASES** *Pages*

*Adhikari v. Daoud & Partners*, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013) . . . . . . . . . . . . . . . 5

*Ahmed v. Comm'r for Educ. Lagos State*, 2013 WL 4001194 (N.D. Fla. Aug. 6, 2013) . . . . . . . . . 5

*Ahmed-Al-Khalifa v. Al-Assad*, 2013 WL 4401831 (N.D. Fla. Aug. 13, 2013) . . . . . . . . . . . . . . . . 5

*Ahmed-Al-Khalifa v. Minister of Interior, Fed. Republic of Nigeria*, 2013 WL 3991961 (N.D. Fla. Aug. 2, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ahmed-Al-Khalifa v. Trayers*, 2013 WL 3326212 (D. Conn. July 1, 2013) . . . . . . . . . . . . . . . . . . 5

*Al Shimari v. CACI Int'l, Inc.*, 2013 WL 3229720 (E.D. Va. June 25, 2013) . . . . . . . . . . . . . . . . . 8

*Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24, 25

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 17

*Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490 (S.D.N.Y. 2011) *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Balintulo v. Daimler AG*, 727 F.3d 174 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 24

*Boyd v. AWB Ltd.*, 544 F.Supp.2d 236 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . 17

*Chavez v. Carranza*, 559 F.3d 486 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Chen Gang v. Zhao Zhizhen*, 2013 WL 5313411 (D. Conn. Sept. 20, 2013) . . . . . . . . . . . . . . . 9-10

*Davis v. Baldwin*, 2013 WL 6877560 (S.D.N.Y. Dec. 31, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Deutsch v. Turner Corp.*, 324 F.3d 692 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Dixon v. United States*, 2014 WL 23427 (S.D.N.Y. Jan. 2, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Dove v. Fordham Univ.*, 56 F.Supp.2d 330 (S.D.N.Y.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ellul v. Congregation of Christian Bros*., 2011 WL 1085325 (S.D.N.Y. Mar. 23, 2011) . . . . . . 16

*Flomo v. Firestone Natural Rubber Co.*, 744 F. Supp. 2d 810 (S.D. Ind. 2010)
*aff'd on other grounds*, 643 F.3d 1013 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Giraldo v. Drummond Co., Inc.,* 2013 WL 3873960 (N.D. Ala. July 25, 2013) . . . . . . . . . . . . . . . 5

*Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564(E.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . 18

*Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Properties, LLC,*
435 F.3d 136 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

*Hammerstein v. Fed. Republic of Germany*, 488 F. App'x 506 (2d Cir. 2012) . . . . . . . . . . . . . . . . 2

*In re Parmalat Sec. Litig.*, 477 F.Supp.2d 637 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re September 11 Litig.*, 760 F. Supp. 2d 433 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Vitamin C Antitrust Litigation*, 2012 WL 4511308 (E.D.N.Y. Oct. 1, 2012) . . . . . . . . . . . . 18

*In re Zarnel*, 619 F.3d 156 (2d Cir.2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Javier H. v. Garcia- Botello*, 239 F.R.D. 342 (W.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963(E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . 14

*Jesner v. Arab Bank, PLC*, 2009 WL 4663865 (E.D.N.Y. May 1, 2009) . . . . . . . . . . . . . . . . 14-15

*Joseph S. v. Hogan*, 561 F. Supp. 2d 280 (E.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

*Kaplan v. Cent. Bank of Islamic Republic of Iran*, 2013 WL 4427943
(D.D.C. Aug. 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Kaplan v. Jazeera*, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kiobel v. Royal Dutch Petroleum Co.*, — U.S. —, 133 S. Ct. 1659 (2013) . . . . . . . . . . . . . *passim*

*Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010)
*aff'd on other grounds,* — U.S. —, 133 S. Ct. 1659 (2013) . . . . . . . . . . . . . . . . . . . . 2, 3, 4

*Kirch v. Liberty Media Corp.*, 449 F.3d 388 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Liu Bo Shan v. China Const. Bank Corp.*, 2010 WL 2595095
(S.D.N.Y. June 28, 2010) *aff'd*, 421 F. App'x 89 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . 24

*Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89 (2d Cir. 2011) . . . . . . . . . . . . . . . 4, 25

*Makarova v. United States*, 201 F.3d 110 (2d Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 29

*Manliguez v. Joseph*, 226 F. Supp. 2d 377 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Mason Tenders Dist. Council of Greater New York v. Concore Equip. Inc.*,
2013 WL 5303756 (S.D.N.Y. Sept. 20, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297 (S.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

*Mohamad v. Palestinian Auth.*, — U.S. —, 132 S. Ct. 1702 (2012) . . . . . . . . . . . . . . . . . . . . . . . 1

*Mohammad v. Bin Tarraf*, 300 Fed. App'x. 87 (2d Cir.2008) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Mohammadi v. Islamic Republic of Iran*, 2013 WL 2370594 (D.D.C. May 31, 2013) . . . . . . . . . . 5

*Morabito v. Blum*, 528 F.Supp. 252 (S.D.N.Y.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010) . . . . . . . . . . . . . 4, 10

*Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167(2d Cir. 2008)
*aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Muntslag v. D'Ieteren, S.A.*, 2013 WL 2150686 (S.D.N.Y. May 17, 2013) . . . . . . . . . . . . . . 10-11

*NML Capital v. Republic of Argentina*, 621 F.3d 230 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . 4

*Onwuka v. NYC Taxi Limousine Comm'n*, 2012 WL 34090 (E.D.N.Y. Jan. 6, 2012) . . . . . . . . . 23

*Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612 (S.D.N.Y. 2011)
*aff'd*, 444 F. App'x 469 (2d Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633
(S.D.N.Y. 2006) *aff'd*, 582 F.3d 244 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 12, 26

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244 (2d Cir. 2009) . . . . . . . . 25

*Quinn v. United States*, 946 F. Supp. 2d 267 (N.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99 (D.D.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . 12

*Sikhs For Justice v. Badal*, 2013 WL 2155116 (E.D. WI May 17, 2013)
*aff'd*, 736 F.3d 743 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435 (D.E. 53) *reconsideration denied*,
893 F. Supp. 2d 598 (S.D.N.Y. 2012) (D.E. 91) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) (D.E.91) . . . . 1, 12, 16, 23, 26-27

*Smaldone v. Senkowski*, 273 F.3d 133 (2d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236 (2d. Cir.2002) . . . . . . . . . . . . . . . . . . . . 24

*Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 26, 29

*Tawfik v. Al-Sabah*, 2012 WL 3542204 (S.D.N.Y. Apr. 27, 2012)
*report and recommendation adopted*, 2012 WL 3542209
(S.D.N.Y. Aug. 16, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 314 (E.D.N.Y. 2013) . . . . . . . . . . . . . 17

*Tymoshenko v. Firtash*, 2013 WL 4564646 (S.D.N.Y. Aug. 28, 2013) . . . . . . . . . . . . . . . . . . . 4, 5

*Van Tu v. Koster*, 364 F.3d 1196 (10th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Velez v. Sanchez,* 693 F.3d 308 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wallace v. Kato*, 549 U.S. 384 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) . . . . . . . . . . 25

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*, 889 F. Supp. 2d 912 (S.D. Tex. 2012) . . . . . . . . . . 12, 26

*Zapata v. Quinn*, 564 F. Supp. 23 (S.D.N.Y. 1982) *aff'd*, 707 F.2d 691 (2d Cir. 1983) . . . . . . . 15

*Zapolski v. Fed. Republic of Germany*, 2010 WL 1816327 (E.D.N.Y. May 4, 2010) *aff'd*, 425 F. App'x 5 (2d Cir. 2011) . . . . . . . . . . 24

*Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247 (2d Cir. 2000) . . . . . . 17

*Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74 (2d Cir. 2003) . . . . . . . . . . 15

*Zhou v. Peng*, 286 F. Supp. 2d 255 (S.D.N.Y. 2003) . . . . . . . . . . 2

**NEW YORK STATE CASES**

*Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118 (2011) . . . . . . . . . . 14

*Heslin v. Cnty. of Greene*, 14 N.Y.3d 67 (2010) . . . . . . . . . . 14

*Mingone v. State of New York*, 100 A.D.2d 897 (2d Dept. 1984) . . . . . . . . . . 14

**FEDERAL STATUTES**

8 U.S.C. § 1101(a)(3) . . . . . . . . . . 11

28 U.S.C. § 1332(c)(1) . . . . . . . . . . 11

28 U.S.C. § 1340 ("ATS") . . . . . . . . . . 1, 11-12

28 U.S.C. § 1340, note ("TVPA") . . . . . . . . . . 1

TVPA § 2(c) . . . . . . . . . . 14

28 U.S.C. § 1401(a) . . . . . . . . . . 28

28 U.S.C. § 1651 . . . . . . . . . . 28

50 App. U.S.C. § 1981 . . . . . . . . . . 19

50 App. U.S.C. § 1989 . . . . . . . . . . 19

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . 1, 11, 12

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . 2, 11, 12, 17, 20

Fed. R. Civ. P. 12(h)(3) . . . . . . . . . . 1, 2

Fed. R. Evid. 803(8) . . . . . . . . . . 18

**NEW YORK STATE STATUTES**

C.P.L.R. 503(c) . . . . . . . . . . 11

Est. Powers & Trusts Law § 1-2.13 . . . . . . . . . . 13

Est. Powers & Trusts Law § 5-4.1(1) . . . . . . . . . . 13

Est. Powers & Trusts Law § 11-3.2(b) . . . . . . . . . . 14

Not-for-Profit Corp. Law § 202(a)(2) . . . . . . . . . . 6

Not-for-Profit Corp. Law § 403 . . . . . . . . . . 6

**UNITED STATES GOVERNMENT MATERIALS**

United States Department of State, Background Notes: India, Washington GPO, 2000 . . . . . . . 19

United States Department of State, Background Notes: India, Washington GPO, 2004 . . . . . . . . 19

**FOREIGN GOVERNMENT MATERIALS**

Hindu Succession Act, 1956 . . . . . . . . . . 13

Indian Succession Act, 1925 . . . . . . . . . . 13

Justice Nanavati Commission of Inquiry (1984 Anti-Sikh Riots)
[New Delhi: Ministry of Home Affairs, 2005]
(Library of Congress Call No. KNS4398 .I53 2005) . . . . . . . . . . 17-19, 21

## PRELIMINARY STATEMENT

This case raises tender issues that are rooted in a core betrayal of trust, when Mrs. Indira Gandhi, then India's Prime Minister, was assassinated by her own security guards, on the grounds of her New Delhi home, on October 31, 1984. The resulting tragic and chaotic days, from November 1-4, 1984, have caused the Republic of India to investigate, and remedy, pursuant to its laws. What is un-controverted is that the Sikh community is highly respected for its courage and sacrifice. Indeed, Mahatma Gandhi gave the Sikh leadership title of "Sardar" to a non-Sikh, Hon. Vallabhbhai Patel, a practitioner of peaceful civil disobedience in India's quest for independence from Great Britain, and ultimately India's first Home Minister and Deputy Prime Minister of India upon independence. From thereon Mr. Patel, the "Iron Man of India,"was known throughout India and elsewhere as "Sardar Patel."

This memorandum of law is respectfully submitted on behalf of defendant Indian National Congress Party a/k/a "Congress (I)" ("INC") in support of their motion to dismiss the Second Amended Complaint (D.E. 102) ("SAC").[1] As this Honorable Court lacks subject matter jurisdiction over the plaintiffs' remaining claim sounding in a violation of the Alien Tort Statute (28 U.S.C. § 1340) ("ATS"), the suit must be dismissed with prejudice in accordance with Fed. R. Civ. P. 12(b)(1) and 12(h)(3). The law of our land is that "the presumption against extraterritoriality applies to claims under the ATS"

[1]This Honorable Court has already dismissed all claims against defendant Kamal Nath (*Sikhs for Justice v. Nath*, 850 F. Supp. 2d 435 (D.E. 53) *reconsideration denied*, 893 F. Supp. 2d 598 (S.D.N.Y. 2012) (D.E. 91)) and claims pursuant to the Torture Victim Protection Act of 1991 (28 U.S.C. § 1340, note) ("TVPA") against the INC (*Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 617 (S.D.N.Y. 2012) (D.E. 91) *citing*, *Mohamad v. Palestinian Auth.*, — U.S. —, 132 S. Ct. 1702 (2012) ("INC, as an organization and not a natural person, cannot be held liable under the TVPA"). Given the dismissal of all claims against Kamal Nath on jurisdictional grounds and the dismissal of the TVPA claims against the INC as foreclosed by Supreme Court precedent, the plaintiffs were not entitled to re-plead them in their SAC. However, plaintiffs counsel, in the best of faith, made clear that the inclusion of such claims in the Second through Fifth claims for relief in the SAC was for preservation in the event of an appeal. SAC fn. 1. Given that these claims have already been dismissed, this Honorable Court's Orders dismissing same are incorporated herein by reference. Such prior dismissal is relied upon in not seeking same, herein, anew.

(*Kiobel v. Royal Dutch Petroleum Co.*, — U.S. —, 133 S. Ct. 1659, 1669), a holding rooted in "the 'presumption that United States law governs domestically but does not rule the world.'" *Id.* at 1664 *quoting, Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007). Likewise, dismissal is necessary and proper pursuant to Fed. R. Civ. P. 12(b)(6) as the plaintiffs have failed to state claim upon which relief can be granted.[2]

**POINT I**

**THE COURT LACKS SUBJECT MATTER JURISDICTION, MANDATING DISMISSAL PURSUANT TO FED. R CIV. P. 12(b)(1) AND 12(h)(3)**

- *THERE IS NO SUBJECT MATTER JURISDICTION FOR 'FOREIGN CUBED' EXTRATERRITORIAL CLAIMS UNDER ATS*

Here, a New York domestic corporate plaintiff, "Sikhs For Justice" ("SFJ") that is incapable of suffering physical injury and has not been appointed the "legal representative" of any claimant, along with individuals who allege that they are "aliens" but also do not plead that they have been duly appointed the "legal representative" of any plaintiff, impermissibly seek to continue their unfounded lawsuit sounding in alleged violations of the ATS by the INC, a corporate political entity in India. SAC ¶ 15. The remaining ATS claim in this lawsuit must now also be dismissed as it too is barred by the determinations of both the Second Circuit and the United States Supreme Court in *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010) *aff'd*, — U.S. —, 133 S. Ct. 1659 (2013). The Second Circuit

[2]Critically, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). *See also Hammerstein v. Fed. Republic of Germany*, 488 F. App'x 506, 508 (2d Cir. 2012); *Zhou v. Peng*, 286 F. Supp. 2d 255, 262 (S.D.N.Y. 2003); *Tawfik v. Al-Sabah*, 2012 WL 3542204 (S.D.N.Y. Apr. 27, 2012) *report and recommendation adopted*, 2012 WL 3542209 (S.D.N.Y. Aug. 16, 2012). Furthermore, as here, "[w]hen a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first." *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011) *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe- Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

dispositively held that

> imposing liability on corporations for violations of customary international law has not attained a discernible, much less universal, acceptance among nations of the world in their relations inter se. Because corporate liability is not recognized as a 'specific, universal, and obligatory' norm, it is not a rule of customary international law that we may apply under the ATS. Accordingly, insofar as plaintiffs in this action seek to hold only corporations liable for their conduct in [India] (as opposed to individuals within those corporations), and only under the ATS, their claims must be dismissed for lack of subject matter jurisdiction.

*Kiobel*, 621 F.3d at 145 *quoting*, *Sosa v. Alvarez-Machain*, 542 U.S. 692, 732 (2004). *See also Mastafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 301 (S.D.N.Y. 2010) ("ATS claims cannot be brought against corporations"); *Kaplan v. Jazeera*, 2011 WL 2314783 (S.D.N.Y. June 7, 2011) ("Plaintiffs are seeking to hold Defendant, a corporation, liable for war crimes and violations of the law of nations under the ATS. Accordingly, this Court does not have subject matter jurisdiction over Plaintiffs' ATS claim"); *Flomo v. Firestone Natural Rubber Co.*, 744 F. Supp. 2d 810, 816 (S.D. Ind. 2010) *aff'd on other grounds,* 643 F.3d 1013 (7th Cir. 2011).

The Supreme Court made clear that the law of our land is that the presumption against extraterritoriality applies to the ATS. *Kiobel*, 133 S.Ct. at 1662, 1668–1669. Notably, the

> majority framed the question presented in these terms no fewer than three times; it repeated the same language, focusing solely on the location of the relevant 'conduct' or 'violation,' at least eight more times in other parts of its eight-page opinion; and it affirmed our judgment dismissing the plaintiffs' claims because 'all the relevant conduct took place outside the United States.'

*Balintulo v. Daimler AG*, 727 F.3d 174, 189-190 (2d Cir. 2013) *quoting*, *Kiobel* 133 S. Ct. at 1669. Furthermore, notwithstanding that the Supreme Court's decision did not address the Second Circuit's firm bar against corporate ATS liability,

> [t]his Court is bound by the Second Circuit decision unless and until the Supreme Court or an en banc panel of the Second Circuit unambiguously rejects its rationale. Accordingly, because [INC] is a corporation, Plaintiffs' 'claim[ ] fall[s] outside the limited jurisdiction provided by the ATS.' This Court must consequently dismiss Plaintiffs' ATS claim pursuant to Federal Rule of Civil Procedure 12(b)(1).

*Tymoshenko v. Firtash*, 2013 WL 4564646 (S.D.N.Y. Aug. 28, 2013) *quoting*, *Kiobel*, 621 F.3d at 120 (*citing*, *Boyd v. AWB Ltd.*, 544 F.Supp.2d 236, 243 n. 6 (S.D.N.Y. 2008)). *See also Balintulo*, 727 F.3d at 190 ([l]ower courts are bound by that rule and they are without authority to 'reinterpret' the Court's binding precedent in light of irrelevant factual distinctions. . ."); *Liu Bo Shan v. China Const. Bank Corp.*, 421 F. App'x 89, 91 (2d Cir. 2011) *quoting*, *NML Capital v. Republic of Argentina*, 621 F.3d 230, 243 (2d Cir. 2010) (*quoting*, *In re Zarnel*, 619 F.3d 156, 168 (2d Cir.2010)) ("it is axiomatic that a panel of this court is 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court'").

Furthermore, the Supreme Court held that "even where the claims touch and concern the territory of the United States, they must do so with sufficient force to displace the presumption against extraterritorial application." *Kiobel* 133 S. Ct. at 1669 *citing*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869, 2883 (2010). As the entirety of the alleged acts the plaintiffs herein complain of occurred in India, in 1984, and the sole alleged connection to the United States is the existence of a company that the plaintiffs erroneously claim is a subsidiary to INC, which was formed <u>after</u> the events complained of (SAC ¶¶ 8, 147), there is simply no basis for the plaintiffs claims to be heard in a United States Court.

The plaintiffs seek to do an "end run" around *Kiobel*'s firm bar against extraterritorial ATS suits by urging that the existence of an organization in the United States which is allegedly supportive of the

INC's views, causes the plaintiffs' alleged grievances to "touch and concern" the United States. SAC ¶ ¶ 15, 163-163(a). The plaintiffs, however, completely disregard *Kiobel's* firm holding which "plainly bars common-law suits, like this one, alleging violations of customary international law based solely on conduct occurring abroad." *Balintulo*, 727 F.3d at 182 *citing, Kiobel, supra*. Rather, as the Supreme Court firmly held,

> [c]orporations are often present in many countries, and it would reach too far to say that mere corporate presence suffices. If Congress were to determine otherwise, a statute more specific than the ATS would be required.

*Kiobel*, 133 S. Ct. at 1669. *See Tymoshenko*, at * 3 (" because [defendant] is a corporation, Plaintiffs' 'claim[ ] fall[s] outside the limited jurisdiction provided by the ATS.' This Court must consequently dismiss Plaintiffs' ATS claim pursuant to Federal Rule of Civil Procedure 12(b)(1)"); *Kaplan v. Cent. Bank of Islamic Republic of Iran*, 2013 WL 4427943 (D.D.C. Aug. 20, 2013) ("[b]ecause these extraterritorial attacks do not 'touch and concern the territory of the United States ... with sufficient force to displace the presumption against extraterritorial application [of the ATS],' the claims are barred"). *See also Adhikari v. Daoud & Partners*, 2013 WL 4511354 (S.D. Tex. Aug. 23, 2013); *Ahmed-Al-Khalifa v. Al-Assad*, 2013 WL 4401831 (N.D. Fla. Aug. 13, 2013); *Ahmed v. Comm'r for Educ. Lagos State*, 2013 WL 4001194 (N.D. Fla. Aug. 6, 2013); *Ahmed- Al-Khalifa v. Minister of Interior, Fed. Republic of Nigeria*, 2013 WL 3991961 (N.D. Fla. Aug. 2, 2013); *Giraldo v. Drummond Co., Inc.*, 2013 WL 3873960 (N.D. Ala. July 25, 2013); *Ahmed- Al-Khalifa v. Trayers*, 2013 WL 3326212 (D. Conn. July 1, 2013); *Mohammadi v. Islamic Republic of Iran*, 2013 WL 2370594 (D.D.C. May 31, 2013).

To be clear, as had been attested to by Hon. Motilal Vora, a Member of the Upper House of Indian parliamentary government (Rajya Sabha) and Treasurer of the All India Congress Committee of the INC, in his Declaration of April 23, 2012 (D.E. 77-2),

> [t]he Indian National Overseas Congress is neither a department nor an agent of the Indian National Congress. The Indian National Congress Party has no ownership interest in any entity known as the Indian National Overseas Congress, and the Indian National Congress Party cannot control its activities.

Vora Dec. ¶ 13. Moreover, M.P. Vora further declared that the New York corporations that plaintiffs rely upon to somehow link an Indian political party corporation to New York

> are not affiliates, subsidiaries, departments or agents of the Indian National Congress Party. The Indian National Congress Party has no ownership interest in those entities and cannot control their activities.

*Id.* ¶ 14. Even absent M.P. Vora's declaration, the plaintiffs' allegations are fatal onto themselves as they allege that "INC established IOC in the United States in February 1985, only three months after the Sikh Massacre." SAC ¶ 147 (emphasis added). Moreover, the plaintiffs further allege that "INC has had a substantial, significant and direct presence in the United States since at least 1985" (SAC ¶ 165), which is again, after the alleged events complained of. As IOC was not "born" yet, it surely could not have been to blame for the alleged acts and omissions.[3]

Plaintiffs' unadorned claims that the "IOC . . . [is] controlled by the All India Congress Committee" (SAC ¶ 149) are undone by M.P. Vora's declaration under penalty of perjury. The plaintiffs feeble attempts to create some nexus to the United States is further eviscerated by their reliance

[3]In the case of a New York Domestic Not For Profit Corporation, like IOC, "[u]pon the filing of the certificate of incorporation by the department of state, the corporate existence shall begin." Not-for-Profit Corp. Law § 403. Moreover, the power to sue and be sued exists "in like cases as natural persons." *Id.* at § 202 (a)(2). Thus, IOC was not "born" until its certificate of incorporation was filed in 1985, after the riots in 1984. Accordingly, like a "natural person," the IOC cannot be liable for alleged events preceding its existence.

on records of the New York State Department of State, Division of Corporations (SAC ¶ 148) which uncover the falsity of their claims that the "the 'Indian National Congress of America, Inc. [ ] in 2001 [ ] changed its name to 'Indian National Overseas Congress USA Inc.'" *Id.*. According to the New York Department of State "Indian National Congress of America, Inc." was formed as a "Domestic Not-For-Profit Corporation" on February 20, 1985 with that same name that it continues to hold today (Batra Dec. Ex. 1). Furthermore, according to the records of the Department of State, on December 19, 2001, "Indian National Overseas Congress USA Inc." was established as an entirely different "Domestic Not-For-Profit Corporation" at a completely different location (Batra Dec. Ex. 2). Additionally, notwithstanding the plaintiffs' further SAC misrepresentations claiming that "[i]n or about January 2013, IOC changed its name to the 'Indian National Overseas Congress (I), USA'" (SAC ¶ 152), the Department of State reveals the falsity of those claims as well. Specifically, on January 3, 2012, the Domestic Not-For-Profit Corporation now known as "Indian National Overseas Congress (I), USA" was formed as "NRIS For Better India, Inc." (Batra Dec. Ex. 3). Thereafter, on April 20, 2012, the corporation changed its name to "Indian National Overseas Congress (I), USA." *Id.*.

Thus, this company too is not the same as the INC or the IOC, notwithstanding plaintiffs' disproved claims. Thus, much like the INC in the Republic of India is its own separate and distinct corporation, so too, according to the very records the plaintiffs themselves rely upon, are the "Indian National Congress of America, Inc.," the "Indian National Overseas Congress USA Inc.'" and "Indian National Overseas Congress (I), USA" are separate and distinct legal entities. Nevertheless, even if plaintiffs' claims were true (notwithstanding they have been disproved with documentary evidence that may be considered by this Honorable Court) they do not give rise to subject matter jurisdiction. Rather,

> absent congressional action, the ATS cannot provide jurisdiction for alleged violations of the law of nations where the alleged conduct occurred in territories outside the United States. Here, as in Kiobel, Plaintiffs are barred from asserting ATS jurisdiction because the alleged conduct giving rise to their claims occurred exclusively on foreign soil.

*Al Shimari v. CACI Int'l, Inc.*, 2013 WL 3229720,*7 (E.D. Va. June 25, 2013) *citing*, *Kiobel*, *supra*.

In *Al Shimari*, the District Court further dispensed with plaintiffs' argument that the "touch and concern" language in *Kiobel* would "permit displacement of the presumption against extraterritoriality by judicial decision rather than by legislative act" (*id*. at * 8) finding that

> [t]he Supreme Court makes clear that the presumption against extraterritoriality is only rebuttable by legislative act, not judicial decision. This reading is supported by at least four specific references in the opinion. First, Kiobel framed its discussion by stating that '[w]hen a statute gives no clear indication of an extraterritorial application, it has none,' suggesting that the text of the statute itself, rather than any judicial factual determination, must rebut the presumption. Second, Kiobel stated that 'to rebut the presumption, the ATS would need to evince a clear indication of extraterritoriality,' again using language directed at the statute itself. In concluding this portion of the analysis, the Kiobel Court again stated that 'nothing in the statute rebuts [the] presumption.' Third, the Court commented that a statute more specific than the ATS would be required if Congress intended courts to exercise jurisdiction over claims predicated on extraterritorial acts. Fourth, Kiobel explains that the presumption serves to maintain the respect of those matters committed to other branches, such that 'Judiciary does not erroneously adopt an interpretation of U.S. law that carries foreign policy consequences not clearly intended by the political branches.'

*Al Shimari*, *supra* at *8 *quoting, Kiobel*, 133 S. Ct. at 1664-1665, 1669 (*citing, EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991)). Accordingly,

> Plaintiffs' ATS claims are barred because the ATS does not provide jurisdiction over their claims, which involve tortious conduct occurring exclusively outside the territory of the United States. As *Kiobel* suggested, if Congress were to determine that the ATS should apply extraterritorially, a statute more specific than the ATS would be required.

*Al Shimari*, *supra* at * 10.

All of the plaintiffs' claims under ATS are wholly extraterritorial and accordingly must be dismissed. The entirety of the SAC consists of allegations of conduct in India, by Indian citizens, ostensibly acting with or through the government of India, allegedly causing harm to other Indian citizens, in India. The law of our land is that "the presumption against extraterritoriality applies to claims under the ATS" (*Kiobel*, 133 S. Ct. at 1669), a holding rooted in "the 'presumption that United States law governs domestically but does not rule the world.'" *Id.* at 1664 *quoting, Microsoft Corp.*, 550 U.S. at 454.

The plaintiffs try to escape the extraterritorial bar by alleging that the existence of the IOC in the United States - notwithstanding IOC was formed after the events complained of (SAC ¶¶ 8, 147) - creates a scenario wherein the parties and the action "touch and concern the United States with sufficient force" to displace the "presumption or judicial construct suggesting that these claims cannot be heard in a District Court." *Id.* ¶ 163. The plaintiffs urge that alleged conduct in India by the corporate defendant intended to dissuade prosecution of this action "is directed at and intended to be felt by those plaintiffs who have sought refuge in the United States as well as any other Sikh victim or survivor who fled to this country for their safety." *Id.* ¶ 163(a). This does not overcome the necessary presumption against extraterritoriality - critical for sovereigns to peacefully and respectfully coexist in comity.

Importantly, the plaintiffs have utterly failed to particularize any specific conduct that they allege "touches and concerns" the United States. Moreover, plaintiffs have failed to set forth any "sufficiently definite norms of international law" that they allege "touch and concern" the United States. *Kiobel*, 133 S.Ct. at 1664. The scenario herein is much like one recently considered by the District of Connecticut. In *Chen Gang v. Zhao Zhizhen*, 2013 WL 5313411 (D. Conn. Sept. 20, 2013), the plaintiffs' Second

Amended Complaint alleged human rights abuses in China based upon religious and spiritual beliefs and practices. Those plaintiffs alleged that the defendant used control of Chinese media to "encourag[e] and support[] acts of torture and other major human rights abuses against the Plaintiffs" *Id.* at * 1. The plaintiffs urged the District Court to distinguish their case from *Kiobel* because, they claimed, the allegedly offending media was directed at United States citizens. *Id.* at * 3. The *Chen Gang* Court rejected those arguments, holding that

> [d]espite plaintiffs' attempts to distinguish their claims from those in Kiobel, this case is also a paradigmatic 'foreigncubed' case. The plaintiffs are all past or present residents of the People's Republic of China, or visitors to that country, the defendant is a Chinese citizen, and the alleged violations of international law that the defendant allegedly aided and abetted-torture, arbitrary arrest and detention, crimes against humanity and violation of the rights to life, liberty, security of persons and peaceful assembly and association took place entirely abroad, in Mainland China. Under Kiobel, the ATS does not confer jurisdiction over such exclusively extraterritorial claims.

*Id.* at * 3 (*internal citations and quotation marks omitted*). Further relying on *Kiobel*, the Court reiterated that "'the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever some domestic activity is involved in the case.'" *Id.* at * 4 *quoting*, *Kiobel*, 133 S.Ct. at 1669 (*citing*, *Morrison*, 130 S.Ct. at 2884 (2010)). Indeed, the presumption against extraterritoriality is a <u>ferocious watchdog</u>, needed for the United States to fend off any other nation's attempt to meddle in American affairs on American soil - the heart of American judicial sovereignty.

Notwithstanding the plaintiffs desperate attempt to circumvent the crystal clear holdings of both the Second Circuit and the Supreme Court, as "the ATS does not provide the federal courts of the United States with subject matter jurisdiction over torts that occur outside of the United States"

(*Muntslag v. D'Ieteren, S.A.*, 2013 WL 2150686 (S.D.N.Y. May 17, 2013) *citing*, *Kiobel*, 133 S.Ct. at 1669), the plaintiffs' remaining claim for relief, ostensibly sounding in the ATS, must be dismissed as "claims under the ATS cannot be brought for violations of the law of nations occurring within the territory of a sovereign other than the United States." *Balintulo*, 727 F.3d at 189. *See also Velez v. Sanchez,* 693 F.3d 308, 318 (2d Cir. 2012) (emphasis added).

- *"SIKHS FOR JUSTICE" IS NOT A PROPER PLAINTIFF REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)*

Plaintiffs specifically allege, in pertinent part, that plaintiff Sikhs for Justice is a New York corporation with a principal place of business in New York County, which was established in response to incidents in India in 1984. SAC ¶ 8. Accordingly, on the face of the complaint, SFJ is legally barred from ever being an ATS or TVPA plaintiff, as it is not an "individual," not an "alien," and not a "legal representative" - and it, as an entity, can never be physically hurt, tortured or killed.

The scope of ATS is limited to providing prospective relief in a "civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." ATS. *See e.g. Orkin v. Swiss Confederation*, 770 F. Supp. 2d 612, 617 (S.D.N.Y. 2011) *aff'd*, 444 F. App'x 469 (2d Cir. 2011). The plaintiffs rely on the definition of "Alien" contained within the Immigration and Nationality Act, to wit: "any person not a citizen or national of the United States." (SAC fn. 2 *citing*, 8 U.S.C. § 1101(a)(3)). Furthermore, under New York law, "[a] domestic corporation, or a foreign corporation authorized to transact business in the state, shall be deemed a resident of the county in which its principal office is located" (C.P.L.R. 503(c)), while 28 U.S.C. § 1332(c)(1) provides that a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state

where it has its principal place of business."

The plaintiffs knew this was an issue as it was already addressed in the context of this very action at which time Judge Sweet specifically held that "'[a] district court lacks subject matter jurisdiction under the ATS if the plaintiff is not an alien.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d at 619 (D.E. 91) *quoting*, *Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*, 889 F. Supp. 2d 912, 921 (S.D. Tex. 2012). Moreover, an institutional plaintiff that is a United States corporation "is not an alien and may not bring suit under the ATS." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 453 F. Supp. 2d 633, 661 (S.D.N.Y. 2006) *aff'd*, 582 F.3d 244 (2d Cir. 2009). *See also S.K. Innovation, Inc. v. Finpol*, 854 F. Supp. 2d 99, 113 (D.D.C. 2012) ("the American corporate Plaintiffs, as non-aliens, lack standing to bring claims under the ATS"). As SFJ is a United States Citizen, it is not within the class who can sue under ATS.

- *NONE OF THE PLAINTIFFS IS PROPERLY A "LEGAL REPRESENTATIVE" REQUIRING DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)*

SFJ and most of the individual plaintiffs claim that they are pursuing relief on behalf of third-parties for whom they have not established a legal ability to act. United States citizen SFJ's sole claim to representative authority is their unadorned claim to have been "formed to seek justice and compensation for those Sikhs who were injured or whose family members were killed and whose property was destroyed" during the 1984 riots. SAC ¶ 8. Nowhere does SFJ even claim to have authority from any person to bring claims on their behalf, nor does it allege having been appointed the "legal representative" of anyone by a Court of competent jurisdiction.

Similarly, the only allegation in the SAC as to Mohender Singh's putative authority is an unadorned claim that he is "the lawful heir and next of kin" of Sardar Darshan Singh. SAC ¶ 10. There is no allegation that Mohender Singh has ever been appointed the "legal representative" of his father's estate in any jurisdiction. Likewise, plaintiff Iqbal Kauer Bhatia simply alleges that she "is the lawful heir and next of kin of her late father and son" (*id.* ¶ 12); however, she does not even suggest that she has been appointed by any Court to serve as the "legal representative" of any state.[4] Furthermore, plaintiffs Manjit Singh and Tejinder Singh collectively claim only that they are "the lawful heirs, next of kin and proper claimants" (*id.* ¶ 13); however, like their co-plaintiffs, they too have offered nothing to demonstrate their appointment as "legal representatives" by a proper Court. Moreover, plaintiff Kamaljit Kaur Girin's claim suffers from the same infirmity as she too merely alleges to be a "lawful heir, next of kin and proper claimant" (*id.* ¶ 14) with no allegations regarding appointment to act as such by any Court, much less a proper one.

Under New York law, "[a] personal representative is a person who has received letters to administer the estate of a decedent." Est. Powers & Trusts Law § 1-2.13. Furthermore, to "be a claimant in an action for wrongful death" a person must be the decedent's "personal representative, duly appointed in this state or any other jurisdiction." *Id.* § 5-4.1(1).[5] As none of the plaintiffs have pled or established that they are the "legal representatives" or have any authority to be a claimant for any

---

[4]As the SAC alleges that co-plaintiffs Iqbal Kauer Bhatia and Davinder Pal Bhatia are mother and son (SAC ¶ 94), there may also be inherent conflicts as to potential legal authority that would have to themselves be addressed by a Surrogate's Court.

[5]Even if the laws of the Republic of India were being applied, the plaintiffs, and anyone seeking to be a "legal representative" would still have to obtain judicial authority from a Court of competent jurisdiction to act as such "legal representative." *See e.g.* Indian Succession Act, 1925; Hindu Succession Act, 1956.

decedent, such claims must be dismissed. *Grosshandels-Und Lagerei-Berufsgenossenschaft v. World Trade Ctr. Properties, LLC*, 435 F.3d 136, 140 (2d Cir. 2006) *quoting*, *Mingone v. State of New York*, 100 A.D.2d 897, 899 (2d Dept. 1984) ("[a] personal representative who has received letters of administration of the estate of a decedent is the only party who is authorized to bring a survival action for personal injuries sustained by the decedent . . . on account of his or her death"); *In re September 11 Litig.*, 760 F. Supp. 2d 433, 443 (S.D.N.Y. 2011) (wrongful death "plaintiff must be the duly appointed 'personal representative' of the decedent"); *Jerry Kubecka, Inc. v. Avellino*, 898 F. Supp. 963, 973 (E.D.N.Y. 1995) ("[a] claim for wrongful death can be brought only by the decedent's personal representative"). *See also* Est. Powers & Trusts Law § 11-3.2(b).

Furthermore, to the extent that the plaintiffs are seeking compensation for "pain and suffering" they allege that any decedent may have suffered, such claims are likewise barred here as "a claim for conscious pain and suffering may only be brought by 'the estate of the deceased, rather than the distributees.'" *Quinn v. United States*, 946 F. Supp. 2d 267, 278 (N.D.N.Y. 2013) *quoting*, *Cragg v. Allstate Indem. Corp.*, 17 N.Y.3d 118, 121 (2011). Critically,"such a claim is personal to the deceased and belongs to the estate, not the distributees." *Heslin v. Cnty. of Greene*, 14 N.Y.3d 67, 77 (2010).

- *THE STATUTE OF LIMITATIONS HAS EXPIRED AND THERE IS NO BASIS FOR EQUITABLE TOLLING*

The TVPA provides a generous, but strict, statute of limitations such that "[n]o action shall be maintained under this section unless it is commenced within 10 years after the cause of action arose." TVPA § 2(c). That same 10 year limitation is applied to ATS claims. *Jesner v. Arab Bank, PLC*,

2009 WL 4663865 (E.D.N.Y. May 1, 2009); *Javier H. v. Garcia- Botello*, 239 F.R.D. 342, 346 (W.D.N.Y. 2006); *Manliguez v. Joseph*, 226 F. Supp. 2d 377, 386 (E.D.N.Y. 2002).

As pled, the alleged "cause[s] of action" arose between November 1-4, 1984. SAC ¶¶ 2, 17, 20. Nearly 3 decades have passed since the events complained of, and nearly 2 decades have elapsed since the statute of limitations expired in November 1994. The plaintiffs seek to escape this fatal defect in their claims by urging that "equitable tolling" applies to the statute of limitations (SAC ¶¶ 134-146) and by suggesting further recent activity should somehow revive these long expired claims. *Id.* ¶¶ 79(a), 141, 163(a). However, this generically alleged conduct, albeit recent, does not constitute a violation of the law of nations, which " include only those actions which rise to a level of international significance or involve well-established, universally recognized norms of international law." *Zapata v. Quinn*, 564 F. Supp. 23, 24 (S.D.N.Y. 1982) (Sweet, J.) *aff'd*, 707 F.2d 691 (2d Cir. 1983) (ATS "applies only to shockingly egregious violations of universally recognized principles of international law"). Moreover, all conduct is still alleged only against INC, which is a corporation - not a "natural person." Accordingly, the recency does nothing to invoke the jurisdiction of the federal courts, nor would it relate back for decades of elapsed time.

"Equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (*internal quotation marks omitted*). "Equitable tolling, however, 'is a rare remedy to be applied in unusual circumstances'" *Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 316 (E.D.N.Y. 2008) *quoting*, *Wallace v. Kato*, 549 U.S. 384, 396 (2007). Accordingly, "[a] plaintiff seeking equitable tolling 'must demonstrate that he acted with 'reasonable diligence' during

the period he wishes to have tolled, but that despite his efforts, extraordinary circumstances "beyond his control" prevented successful filing during that time.'" *Joseph S.*, *supra*, *quoting*, *Smaldone v. Senkowski*, 273 F.3d 133, 138 (2d Cir.2001).

While equitable tolling has been applied in some ATS cases, it is only when there are "extraordinary circumstances outside of plaintiffs' control, which made it impossible for plaintiffs to assert their claims in a timely manner." *Chavez v. Carranza*, 559 F.3d 486, 494 (6th Cir. 2009).[6] This is not the case here, as, on the face of the pleading there were avenues for relief in India, the plaintiffs have long known of the basis for their claims, and most of the plaintiffs have been in the United States for years, as the plaintiffs allege that Jasbir Singh left India in 2002 (SAC ¶ 73), Mohender Singh left in 2008 (*id.* ¶ 79), Davinder Pal Bhatia left India in 2001 (*id.* ¶ 87), Iqbal Kaur Bhatia left India in 2002 (*id.* ¶ 94) and Kamaljit Kaur Girin left India in 1987. *Id.* ¶ 105.[7] Indeed, the SAC makes no plausible allegations warranting equitable tolling. Accordingly, equitable tolling does not apply in this ATS case. *See Ellul v. Congregation of Christian Bros.*, 2011 WL 1085325, *4 (S.D.N.Y. Mar. 23, 2011) *citing*, *Deutsch v. Turner Corp.*, 324 F.3d 692, 718 (9th Cir. 2003); *Van Tu v. Koster*, 364 F.3d 1196, 1200 (10th Cir. 2004).

---

[6]This issue was not yet determined with finality herein because, on the first amended complaint, "questions of jurisdiction have not yet been resolved and remain open, the Court will reserve judgment on the question of whether the Plaintiffs' claims are barred under the statute of limitations and whether equitable tolling is applicable until a later stage in this case, should the case move forward." *Sikhs for Justice*, 893 F. Supp. 2d at 628 (D.E. 91). Nevertheless, Judge Sweet did specifically recognize that "[h]ere, all of the alleged events in the FAC occurred in November 1984, and thus fall outside of the 10 year statutes of limitations. The INC is correct that in general, claims arising under the TVPA and ATS must be filed within 10 years of the triggering event." *Id...*

[7]The SAC does not indicate when or if defendants Manjit Singh and Tejinder Singh left India, or where they reside. Instead, the SAC simply makes a boilerplate allegation that they are collectively "aliens." SAC ¶ 13(a).

While the SAC makes the conclusory and self-serving assertion that "[f]or more than twenty-eight years the Indian government has failed, neglected and refused to properly investigate the incident" (SAC ¶ 136), the plaintiffs nevertheless concedes that police in India took reports regarding the 1984 riots (*id.* ¶ 47) and there were investigations of the 1984 riots held in India, wherein alleged witnesses gave "sworn testimony" (*id.* ¶ 67), "statements" were given to "authorities" (*id.* ¶ 70) and findings were made. *Id.* ¶ 72. The SAC incorporates the collections of the Library of Congress (*id.* ¶ 132), the contents of which further belie the plaintiffs claims. Significantly, maintained at the United States Library of Congress is the report of the *Nanavati Commission of Inquiry (1984 Anti-Sikh Riots)*. *See* Justice Nanavati Commission of Inquiry (1984 Anti-Sikh Riots) [New Delhi: Ministry of Home Affairs, 2005] (Library of Congress Call No. KNS4398.I53 2005).[8] After an exhaustive

---

[8]The Nanavati Commission report was the result of an exhaustive investigation, including the taking of sworn testimony from claimed witnesses and statements from officials - exactly the type of materials the plaintiffs themselves relied upon. SAC ¶¶ 47, 67, 70, 72. The entirety of the 2 volume report is also publically available from the Indian Ministry of Home Affairs. *Justice Nanavati Commission of Inquiry* (Sept. 2, 2005), http://mha.nic.in/hindi/sites/ upload_ files/mhahindi/ files/pdf/ Nanavati-I_eng.pdf, *last accessed* December 19, 2013. SFJ itself also hosts this report on its website. *See* http://www.sikhsforjustice.org/?q=content/nanavati-commission- feb-2005, *last accessed*, December 19, 2013.

In determining a motion to dismiss in accordance with Fed. R. Civ. P. 12(b)(6) the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference [ ] and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Accordingly, this report may be considered on this 12(b)(6) motion. *See also Thomas v. New York City Dep't of Educ.*, 938 F. Supp. 2d 314, 329 (E.D.N.Y. 2013) *quoting, Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

Additionally, "[o]n a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the court to resolve the disputed jurisdictional fact issues." *Davis v. Baldwin*, 2013 WL 6877560 (S.D.N.Y. Dec. 31, 2013) *citing*, *Zappia Middle E. Const. Co. Ltd. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000). *See also Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) *aff'd*, 561 U.S. 247, 130 S. Ct. 2869 (2010) ("[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings"); *Dixon v. United States*, 2014 WL 23427 (S.D.N.Y. Jan. 2, 2014); *Mason Tenders Dist. Council of Greater New York v. Concore Equip. Inc.*, 2013 WL 5303756 (S.D.N.Y. Sept. 20, 2013) (Sweet, J.) *citing*, *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000) ( in determining a motion pursuant to Rule 12(b)(1), the "court may rely on evidence outside of the pleadings, including declarations submitted in support of the motion and the records attached to these declarations)).

investigation, the Nanavati Commission (which was not the first Commission established by the Indian government to investigate the 1984 riots)[9] issued its report, which as regards then Prime Minister Rajiv Gandhi and the leadership of "Congress (I)" found, in pertinent part, that

> [t]he evidence on the other hand suggest that Shri Rajiv Gandhi had showed much concern about what was happening in Delhi. He had issued an appeal for remaining calm and maintaining communal harmony. . . There is absolutely no evidence suggesting that Shri Rajiv Gandhi or any other high ranking Congress(I) leader had suggested or organized attacks on Sikhs. Whatever acts were done, were done by the local Congress(I) leaders and workers, and they appear to have done so for their personal political reasons. . .

*Id., Justice Nanavati Commission of Inquiry* at p. 182 (Batra Dec. Ex. 4). Thus, far from inciting the riots, it was Prime Minister Rajiv Gandhi who sought to calm the people. Accordingly, in stark conflict with the plaintiffs' unadorned and fallacious claims, there is documented proof that the Indian government has exhaustively investigated the events the plaintiffs complained of and specifically concluded that responsibility for the 1984 riots they complain of does <u>not</u> lie with "Rajiv Gandhi or any other high ranking Congress (I) leader[.]" *Id.*.

The Nanavati Commission report further puts the lie to plaintiffs' claim of no remedies in India. SAC ¶¶ 137, 142. Contrary to their false allegation, the report notes that certain High Courts in India had directed Indian states to pay established amounts to victims of the riots - and that such amounts were

---

The Nanavati Commission findings are also admissible as public records. Fed. R. Evid. 803(8). That the Nanavati Commission was implemented by a foreign government is of no moment as "[t]he public records exception is applicable to reports of '"foreign public offices and agencies that otherwise come within its terms."'" *Glowczenski v. Taser Int'l, Inc.*, 928 F. Supp. 2d 564, 578 (E.D.N.Y. 2013) *quoting*, *In re Vitamin C Antitrust Litigation*, 2012 WL 4511308, *1 (E.D.N.Y. Oct. 1, 2012) (*quoting*, *In re Parmalat Sec. Litig.*, 477 F.Supp.2d 637, 640 (S.D.N.Y. 2007)).

[9] Prior to the Nanavati Commission, there were at least 9 other Commissions authorized by Indian government entities to perform functions related to the 1984 riots: 1. Marwah Commission (November 1984); 2. Misra Commission of Enquiry (May 1985); 3. Kapur Mittal Committee (February 1987); 4. Jain Banerjee Committee (February 1987); 5. Potti Rosha Committee (March 1990); 6. Jain Aggarwal Committee (December 1990); 7. Ahuja Committee (February 1987); 8. Dhillon Committee (1985); 9. Narula Committee (December 1993).

paid. *Justice Nanavati Commission of Inquiry* at p. 183.[10] Additionally, while the plaintiffs urge that "Congress (I) has been effectively in control in India since at least 1984" (SAC ¶ 144), these false claims are belied by history, including as recorded by the governments of the United States and the Republic of India. Specifically, based upon records certified by the Indian Prime Minister's Office, the leadership of India was not with "Congress (I)" from May 16, 1996 through May 22, 2004 (Batra Dec. Ex. 5). Moreover, in 2000, the United States Department of State reported that there was

> ongoing transition in Indian politics away from the historically dominant and national based Congress Party toward smaller, narrower-based regional parties. This process has been underway throughout much of the past decade and is likely to continue in the future.
>
> *****
>
> Priding itself as a secular, centrist party, the Congress has been the historically dominant political party in India. Its performance in national elections has steadily declined during the last decade. . . The political fortunes of the Congress have suffered badly as major groups in its traditional vote bank have been lost to emerging regional and caste-based parties. . .

United States Department of State, Background Notes: India, Washington GPO, 2000 (Batra Dec. Ex. 6). Furthermore, as reported by the Department of State in November 2004, "Congress (I)" was unable to return to power on its own, had to align with smaller regional parties. . ." (Batra Dec. Ex. 7).

Accordingly, recorded history demands that the SAC be dismissed for its exposed falsity. Notwithstanding that the INC did not instigate, orchestrate or direct the 1984 riots, the facts further demonstrate that the INC lost its parliamentary majority in 1996 and remained in the minority through 2004. Moreover, even when the INC returned to the majority in 2004, it was with the necessary

---

[10]This is somewhat analogous to the restitution the United States Congress directed be paid to United States citizens of Japanese ancestry who were interned during World War II. *See e.g.* 50 App. U.S.C. § § 1981, *et. seq.*, 1989, *et. seq.*.

support of smaller parties in a coalition government. Thus, plaintiffs demonstrably false claim that the INC "has been effectively in control in India since at least 1984" (SAC ¶ 144) completely disregards the 8 year period between 1996 and 2004 when the INC had no parliamentary control.

**POINT II**

**THE SAC FAILS TO STATE A CLAIM REQUIRING DISMISSAL PURSUANT TO FED. R. CIV. P. 12(b)(6)**

In sweeping and conclusory allegations about happenings in India in 1984 the plaintiffs fail to attribute a single actual act or omission to the INC and instead seek to paint the entirety of the INC with allegations regarding a few of its members and unidentified individuals that the plaintiffs, without more, baldly label as INC "workers." *Id.* ¶¶ 3(a), 5, 38-69, 73-108, 110, 112-113, 115-116, 119, 123, 127, 133, 167-168. It is, however, well settled that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007). Given plaintiffs' repeated pleading failures, the SAC must now be dismissed with prejudice.

The SAC generically alleges that "a widespread, systematic and organized effort was underway the next day lead (*sic*) by Congress (I) officials acting under the authority of Congress (I) to incite, organize and weaponize groups of people to kill Sikhs initially in New Delhi and then throughout India"

(SAC ¶ 40) and in 1984 "Congress (I) ruled and controlled 18 states where it organized, directed, controlled and/or purposefully aided and abetted 'The Sikh Massacre.'" *Id.* ¶ 44. While the SAC provides blanket claims of non-specific wrongdoing by non-parties and unidentified persons, in no way do the plaintiffs plausibly delineate any involvement by the INC as a unified body. Rather, the entirety of the SAC is based upon the misguided and supportable notion that because certain named people are alleged to be involved, then the entire INC is responsible. Moreover, the official findings of the Nanavati Commission concluded that the entire premise of the plaintiffs' complaint, as regards "Congress (I)" is wrong. *See Justice Nanavati Commission of Inquiry* at pp. 182-183.

As pled, the only named individual involved in any alleged wrongdoing associated with plaintiff Jasbir Singh is "Congress (I) leader Bhola Ram." SAC ¶ 73. Additionally, Jasbir Singh further alleges overhearing statements by "Congress (I) official and Member of Parliament Jagdish Tytler." *Id.*. The SAC further generically alleges that at some unspecified time Jasbir Singh was "threatened by [unidentified] Congress (I) party leaders and workers[,]" " detained and tortured by [unidentified] local police on several occasions at the request of [unidentified] Congress (I) leaders" and "abducted and tortured" at the behest of "Congress (I) leader Jagdish Tytler" ostensibly " for submitting an affidavit to authorities regarding the former's actions on November 1, 1984." *Id.*. Thus, there is no plausible link to the INC as a corporate political entity, and the only persons who Jasbir Singh makes any attempt to connect to any alleged actions in India, nearly three decades ago, are non parties Bhola Ram and Jagdish Tytler.

Furthermore, as for actual harm that Jasbir Singh alleges to have individually suffered, it boils down to him allegedly "escap[ing] an attempt on his life by running, hiding and cutting his hair to remove

any evidence of his Sikh identity." *Id.*. Even if true, this does not constitute "torture," "extrajudicial killing" or any other violation of the Law of Nations. Thereafter, without identifying any actors, and with zero plausible connection to the INC, Jasbir Singh nakedly alleges "severe physical injuries and severe mental and emotional pain and suffering[.] *Id.*.

Similarly, as regards plaintiff Mohender Singh, and his late father Sardar Darshan Singh, the SAC also fails to state a claim against the INC. Rather, the plaintiffs allege that there was an attack on Mohender Singh's family on November 1, 1984 that "Congress (I) leader and Member of Parliament HKL Bhagat organized, armed and led[.]" *Id.* ¶ 76. Moreover, according to the plaintiffs, this alleged attack was carried out by "Kishori, Mohammad Abbas, Dr. Zulfqar Kashaf (a/k/a "Lamboo") and Rampal Saroj." *Id.*. Nowhere does the INC as an entity come into this calculus. The SAC further alleges that Sardar Darshan Singh was beaten, stabbed to death and dismembered "[o]n the command of HKL Bhagat and other Congress (I) leaders present." *Id.* ¶ 98. As troubling as these allegations are, again, the SAC is devoid of reference to any plausible involvement by INC as an entity.

As for Mohender Singh himself, the SAC alleges only that the "group" which was allegedly "organized, armed and led" by "HKL Bhagat" "searched for Mohender Singh attempting to kill him and any other children they found." *Id.* ¶ 77. While this allegation does not constitute "torture," "extrajudicial killing" or any other violation of the Law of Nations as pertains to Mohender Singh, it also fails to attribute any conduct to the INC as a corporate body. Furthermore, the complaint alleges that Mohender Singh suffered "severe physical injuries and severe mental and emotional pain and suffering" as well as "economic damages [ ] as a result of the loss of his father" (*id.* ¶ 79) - but he makes no attempt to delineate the causation of such alleged physical and emotional injuries, or to identify the alleged

"economic damages." Accordingly, the claims brought by Mohender Singh are also not plausibly alleged, further mandating their dismissal, now with prejudice.

Plaintiff Davinder Pal Bhatia claims that he was shot in the shoulder by unidentified assailants during an attack allegedly led by non-party Bharti Mishra (*id.* ¶¶ 81-82); however, this allegation does not constitute "torture," "extrajudicial killing" or any other violation of the Law of Nations. Similarly, the SAC further painfully alleges that plaintiff Iqbal Kaur Bhatia, Davinder Pal Bhatia's mother (*id.* ¶ 94), was shot in her hand by an unidentified assailant during that same attack. *Id.* ¶¶ 90-91. Rather critically, the SAC fails to plausibly attribute any alleged conduct to the INC as an entity directed at Davinder Pal Bhatia and Iqbal Kaur Bhatia.

Plaintiffs Manjit Singh and Tejinder Singh collectively allege no injury sustained by them individually and accordingly, they do not plausibly allege any cause of action. Similarly, Kamaljit Kaur Girin does not allege personally sustaining any injury and therefore she too makes no plausible allegations sufficient to sustain a cause of action.

The instant plaintiffs were firmly alerted to the fact that "allegations in a complaint must be complete enough to enable a reader to understand how each defendant was personally involved in the wrongdoing plaintiff is alleging." *Sikhs for Justice*, 893 F. Supp. 2d at 616 (D.E. 91) *citing*, *Onwuka v. NYC Taxi Limousine Comm'n*, 2012 WL 34090, at *4–5 (E.D.N.Y. Jan. 6, 2012). It is for this reason that where, as here, the complaint "'contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" *Sikhs for Justice, id.. quoting*, *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y.1999) (*quoting, Morabito v. Blum*, 528 F.Supp. 252, 262 (S.D.N.Y.1981)).

Even as corporate entity-INC cannot be liable, the SAC also fatally lacks any description, whatsoever, of what the plaintiffs allege constituted "torture," who performed the alleged "torture," when and where the alleged "torture" occurred and what "injuries" were caused by the claimed "torture." *See Zapolski v. Fed. Republic of Germany*, 2010 WL 1816327 (E.D.N.Y. May 4, 2010) *aff'd*, 425 F. App'x 5 (2d Cir. 2011) *citing*, *Mohammad v. Bin Tarraf*, 300 Fed. App'x. 87 (2d Cir.2008) (dismissing a pleading that did not describe the alleged acts of torture as "legally insufficient"). Rather, the SAC "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action [which] will not do.'" *Liu Bo Shan v. China Const. Bank Corp.*, 2010 WL 2595095 (S.D.N.Y. June 28, 2010) *aff'd*, 421 F. App'x 89 (2d Cir. 2011) *quoting*, *Iqbal*, 556 U.S. at 678 (*quoting*, *Twombly*, 550 U.S. at 555). *See also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) *quoting*, *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d. Cir.2002) ("'[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss").

After now twice "fine tuning" their complaint, the plaintiffs have still not identified a <u>single</u> act by the INC directed at them or which caused them harm. Moreover, while the SAC baldly alleges, in a conclusory manner, that "Congress (I) officials, leaders, employees and supporters also played an active and direct role in the massacre, exercised command responsibility over it, conspired with and aided and abetted others . . ." (SAC ¶ 3(a)) and that "Congress (I) also exercised command responsibility over its officials, leaders, employees, subordinates, supporters and over persons or groups acting in coordination or concert with them or under their control. . . Defendant Congress (I) knew or should have known that those crimes were being committed ..." (*id.* ¶ 171), there are not a shred of plausible factual allegations

as to what INC as a body allegedly did, how INC allegedly acted; when INC is alleged to have acted; , who was allegedly directed to act; and how the plaintiffs were directly impacted by such alleged directives. Critically also missing is any plausible fact rooted allegation that INC specifically targeted the plaintiffs themselves.

The plaintiffs generically claim that the INC "conspired" with (*id.* ¶¶ 3(a), 5, 112) and "aided and abetted" (*id.* ¶ 3(a), 5, 44) others; however, such "[b]road allegations of conspiracy are insufficient; the plaintiff 'must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end.'" *Arar v. Ashcroft*, 585 F.3d 559, 569 (2d Cir. 2009) *quoting*, *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003). Indeed, "[t]o state a claim for aiding and abetting under international law, a plaintiff must allege that defendant (1) provided 'substantial assistance' to the perpetrator; and (2) acted with the 'purpose' of facilitating the alleged offenses, rather than with mere knowledge." *Liu Bo Shan*, 421 F. App'x at 93 *quoting*, *Presbyterian Church Of Sudan*, 582 F.3d at 247. Moreover, any "conspiracy" under international law would require a "joint criminal enterprise" and therefore "plaintiffs' conspiracy claims would require the same proof of mens rea as their claims for aiding and abetting." *Id.* at 260. The SAC provides no insight as to any agreement or any overt acts in furtherance of any conspiracy, nor does it provide any basis to plausibly conclude that the INC aided and abetted anyone.

Plaintiffs' "allegations sound much like those found insufficient by the Supreme Court in Iqbal: statements of legal conclusions rather than true factual allegations. Formulaic recitations of the elements of a claim, such as these, are conclusory and are entitled to no assumption of truth. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) *citing, Iqbal*, 129 S.Ct. at 1951. The SAC "has all of the flaws

against which Iqbal warned. In addition, the case runs into the limitations that Sosa set for ATS cases: judicial creativity is not justified." *Mamani*, 654 F.3d at 1156 *citing*, *Sosa*, 124 S.Ct. at 2763. "Given the context, the pleadings are highly conclusory; and the international law applicable to the specific circumstances is not clearly defined. As we see it, the criteria to judge what is lawful and what is not lawful, especially for national leaders facing thousands of people taking to the streets in opposition, is largely lacking. In a case like this one, judicial restraint is demanded. *Mamani*, 654 F.3d at 1156-1157 *citing*, *Sosa*, 124 S.Ct. at 2762. Accordingly, lacking any plausible specificity, as a matter of law the plaintiffs claims must all be dismissed, now with prejudice.

**POINT III**

**PLAINTIFFS SFJ, JASBIR SINGH AND MOHENDER SINGH DISREGARDED THE IMPORT OF JUDGE SWEET'S DISMISSAL AND STAY (D.E. 91)**

It is respectfully submitted that the plaintiffs are abusing the privilege of litigating in the United States federal courts as a tool to improperly generate publicity. They know that they have no entitlement to relief but are filing cases so as to obtain immunity from suit for their defamatory claims.

By Order entered September 21, 2012 (D.E. 91), Judge Sweet concisely informed the plaintiffs that if a plaintiff is not an "alien" the District Court lacks subject matter jurisdiction (*Sikhs for Justice*, 893 F. Supp. 2d at 619 *quoting*, *Weisskopf*, 889 F. Supp. 2d at 921) while citing *Presbyterian Church of Sudan,* wherein Judge Cote held (and ultimately the Second Circuit affirmed) that a domestic corporation, like SFJ, cannot bring suit under the ATS. *Presbyterian Church of Sudan*, 453 F. Supp. 2d at 661 *aff'd*, 582 F.3d 244 (2d Cir. 2009). By that same Order, Judge Sweet held that the then, and still, controlling precedent of the Second Circuit precludes claims against corporations under the ATS.

*Sikhs for Justice*, 893 F. Supp. 2d at 620 *quoting*, *Kiobel*, 621 F.3d at 148-149. Because *Kiobel* was then being considered by the Supreme Court, Judge Sweet stayed the instant matter pending the High Court's determination in *Kiobel*. *Sikhs for Justice*, 893 F. Supp. 2d at 622 (D.E. 91).

Importantly, SFJ holds itself out as having its own "Legal Team" led by Gurpatwant Singh Pannun, Esq. (http://www.sikhsforjustice.org/?q=content/about-us, *last accessed*, January 13, 2014) with offices in Queens County (http://pannunfirm.com/index.php?option=com_content &task=view&id= 25, *last accessed*, January 13, 2014). While the stay was in effect here, despite a lawyer at its helm, SFJ, along with plaintiffs herein Jasbir Singh and Mohender Singh wholly disregarded Judge Sweet's Order and the controlling precedent contained therein and commenced a nearly identical action in the Eastern District of New York against Hon. Sonia Gandhi, President of defendant INC (and the widow of former Indian Prime Minister Rajiv Gandhi son of Prime Minister Indira Gandhi and her immediate successor), styled, *Sikhs For Justice, et. al. v. Gandhi*, 13 Civ. 4920 (BMC). At commencement there was no mention to that Court, in a neighboring district, that the instant case was pending, or that it was stayed.[11] Notably, the suit at commencement named Mrs. Gandhi solely in her capacity as President of the INC - which is purely corporate.[12] Thus, despite being led by Mr. Pannum, who as a lawyer should know better, when plaintiffs herein, SFJ, Jasbir Singh and Mohender Singh, determined

[11]Importantly, this additional suit, which essentially mirrors the claims herein, is being pursued by different counsel than the attorney representing the plaintiffs herein. Accordingly, to be clear, upon information and belief, Mr. Fitzgerald is not involved in the Eastern District of New York matter.

[12]At the initial conference pursuant to Fed. R. Civ. P. 16, before Hon. Brian M. Cogan in the Eastern District, Judge Cogan specifically confronted these plaintiffs, via their counsel Guljit Bains, Esq., regarding the preclusive nature of the Supreme Court's action in *Kiobel*. Notably, notwithstanding that these same plaintiffs are steeped in the instant matter, wherein Judge Sweet has clearly delineated the relevant precedent, plaintiffs' counsel in the Eastern District was then not even aware of *Kiobel*. Notwithstanding same, Judge Cogan granted these plaintiffs leave to interpose an amended complaint.

that they were not happy with Judge Sweet's even handed and fair enforcement of the law, they commenced their Eastern District action trying to secrete the existence of any related actions from the District Courts in neighboring sister jurisdictions.

The plaintiffs amended their complaint in the Eastern District on December 3, 2013 (E.D.N.Y. D.E. 17). Notably, many of the amendments seem to be copied, at times verbatim without attribution, from the SAC herein, which is the subject of the instant motion to dismiss. By motion filed in the Eastern District on January 2, 2014, the undersigned, on behalf of Mrs. Gandhi, seeks an Order, *inter alia*, dismissing the amended complaint (EDNY D.E. 20-22).[13]

In addition to the Eastern District action, SFJ, along with others apparently acting under its banner, have filed additional lawsuits in various judicial districts, including the Southern District of New York, alleging violations of the ATS and TVPA, including: (a) *Sikhs For Justice v. Parkash Singh Badal*, 12–CV–00806 (LA), commenced on August 8, 2012, in the Eastern District of Wisconsin;[14] (b) *Sikhs For Justice v. Manmohan Singh*, 13-CV-01460 (JEB), commenced in the District of Columbia

[13]With leave of Judge Cogan, on January 13, 2014, Mrs. Gandhi's motion was amended to include a Declaration by Mrs. Gandhi as relates to her attack on personal jurisdiction and non-service of the summons and complaint (E.D.N.Y. D.E. 24-25). The motion in the Eastern District also seeks a pre-suit injunction against plaintiff SFJ pursuant to 28 U.S.C. § 1651. Because that motion is directed at SFJ and relates to the claims being made here regarding allegations about incidents in the Republic of India occurring in 1984, we did not believe it appropriate to burden this Court with an identical application. Should this Honorable Court wish to also consider the issue of a pre-suit injunction, INC would be happy to brief the issue on an expedited basis, given that the facts and law proffered to the Eastern District would be identical to those considered by this Court.

In the event that Judge Cogan declines to dismiss in whole or in part, Mrs. Gandhi alternatively sought an Order pursuant to 28 U.S.C.§. 1404(a), transferring venue to the Southern District of New York given that the instant case against INC is pending here, and the matters involve related issues of facts and law.

[14]This action was commenced against the highest official in the Indian State of Punjab, sitting Chief Minister Badal. The District Court dismissed the complaint for insufficient service of process in accordance with Fed. R. Civ. P. 12(b)(5). *Sikhs For Justice v. Badal*, 2013 WL 2155116 (E.D. WI May 17, 2013). The District Court was affirmed by the Court of Appeals for the Seventh Circuit. *Sikhs For Justice v. Badal*, 736 F.3d 743 (7th Cir. 2013), which only addressed the service issue; however, it noted that "[w]hether that jurisdiction extends to a tort committed by a foreign official in a foreign country is doubtful in light of the Supreme Court's recent decision in *Kiobel* [.]" *Id.* at 745.

on September 25, 2013 against the current sitting Prime Minister of the Republic of India; and, (c) *Sikhs For Justice v. Manmohan Singh*, 13-CV-06858 (AJN), commenced in the Southern District of New York on September 26, 2013.[15]

**CONCLUSION**

If the standard applicable in a Court of law for legal sufficiency of a complaint or for subject matter jurisdiction was moral, and not legal, than everyone who felt distressed could sue anyone and sympathy would paint every assessment - and, surely, the events of 1984, from the assassination of Prime Minister Indira Gandhi to even a single collateral injury of an innocent Indian citizen, Sikh or otherwise, is ripe for moral sympathy. Importantly, however, the federal courts

> do not look at these ATS cases from a moral perspective, but from a legal one. We do not decide what constitutes desirable government practices. We know and worry about the foreign policy implications of civil actions in federal courts against the leaders (even the former ones) of nations. . . 'It is one thing for American courts to enforce constitutional limits on our own State and Federal Governments' power, but quite another to consider suits under rules that would go so far as to claim a limit on the power of foreign governments over their own citizens, and to hold that a foreign government or its agent has transgressed those limits.' . . . the Supreme Court instructs us that federal courts are to exercise 'great caution' when deciding ATS claims.

*Mamani*, 654 F.3d at 1152 *quoting*, *Sosa*, 124 S. Ct. at 2763.

---

[15]The two lawsuits against Prime Minister Singh are near mirror images, simply filed in separate districts in the hopes that the Prime Minister could be served there. Notably, here in the Southern District, Guljit Bains, Esq., the same attorney representing SFJ, Jasbir Singh and Mohender Singh in the Eastern District action, made an *ex parte* application for alternative service on Prime Minister Singh. By Order dated and filed on September 27, 2013, District Judge Nathan denied SFJ's application, noting that "Defendant's status as a foreign head of state prevents the Court from ordering service of process on him." (*Sikhs For Justice v. Singh*, 13-CV-06858 (AJN), D.E. 3 at p. 1). Judge Nathan further held, in pertinent part, that "Plaintiffs' claims against Defendant would likely be precluded by head-of-state immunity in the event that he was successfully served" (*id.* at p. 5) and given that "the allegations in the Complaint concern actions by foreign citizens, taken against foreign citizens, that occurred overseas. In light of *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), the Court would likely lack subject matter jurisdiction over the merits of this action. " *Id.*.

Critically, the Parliamentary Republic of India has diligently acted within the parameters of its own sovereign laws and judgment exercised by different political parties in government. However, dispositively, the law is the law and the ATS cannot be extraterritorially applied to a foreign-cubed case, and that too, against INC, a corporate political entity. Accordingly, INC's motion must be granted in its entirety, and the SAC dismissed, now with prejudice.

Respectfully submitted,
THE LAW FIRM OF RAVI BATRA, P.C.

Ravi Batra, Esq. (RB 4299)
*Attorneys for Defendant Indian National Congress Party,*
*a/k/a, "CONGRESS (I)"*

1/17/14

*Of Counsel*:
Ravi Batra (RB 4299)
Todd B. Sherman (TS 4031)
*On the brief.*